2004 ND 141

**Janell Marie OPPEGARD–GESSLER,
Plaintiff and Appellant,**

v.

**Richard Matthew GESSLER,
Defendant and Appellee.**

No. 20030205.

Supreme Court of North Dakota.

June 30, 2004.

Jay H. Fiedler, Pearson Christensen, Grand Forks, ND, for plaintiff and appellant.

Patrick W. Fisher (argued) and Troy J. LeFevre (on brief), Fisher & Olson, Ltd., Grand Forks, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Janell Oppegard–Gessler ("Oppegard") appealed from a district court order denying her motion to move the residence of her and Richard Gessler's ("Gessler") two sons from Grand Forks, North Dakota, to Baxter, Minnesota. We reverse and remand.

I

[¶ 2] Oppegard and Gessler divorced in October 2000 after eighteen years of marriage. Four children were born of the marriage, and Oppegard was awarded sole physical custody of the children in the divorce judgment. The amended judgment provided Gessler with reasonable and liberal visitation and an alternative schedule if the parties could not agree on

visitation. After one child reached the age of majority, a second amended judgment was entered giving Gessler sole physical custody of the couple's sixteen-year-old daughter and Oppegard sole physical custody of the couple's two sons, who were twelve and eleven years old at the time of the hearing on the motion to relocate. Flexible, liberal visitation has been the practice between the parties.

[¶ 3] Oppegard became engaged to Daniel Viau, who lives and works as an engineer in the Baxter area, and the couple planned to marry in July 2003. Baxter is approximately 210 miles from Grand Forks. Under N.D.C.C. § 14–09–07, Oppegard sought judicial permission to relocate to Baxter with the boys. Oppegard, who works as a nurse in Grand Forks, and Viau testified that Oppegard would not work outside the home if she were allowed to relocate so she would have more time to spend with the children. Oppegard testified that she would still marry Viau if the trial court denied her motion to relocate. However, she did not indicate whether she intended to move if the court denied the motion. Both boys expressed a "strong preference" to remain in Grand Forks because that is where their friends and family are located.

[¶ 4] The district court found Gessler and Oppegard have a de facto joint physical custody arrangement in which, although the divorce decree awarded Oppegard sole physical custody of the children, the parties have a very spontaneous policy of frequent, almost daily contact between the children and both parents. It found the children to be well-adjusted socially, comfortable with the current custody arrangement, and dependent upon the arrangement for their stability and well-being. The court weighed the advantages and disadvantages of the move and considered whether there was a realistic opportunity for adequate visitation if the move was allowed. It found the disadvantages outweighed the advantages and it would not be in the best interests of the children to move with Oppegard. Further, the district court concluded an adequate visitation schedule could not be devised to preserve the relationship between the boys and their father, sister, extended family, school, friends, activities, and community. Consequently, the district court denied Oppegard's motion to relocate with the boys.

[¶ 5] On appeal, Oppegard contends the district court's denial of her motion to relocate was clearly erroneous.

II

[¶ 6] Section 14–09–07, N.D.C.C., provides a custodial parent "may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree." The purpose of N.D.C.C. § 14–09–07 is to protect the noncustodial parent's visitation rights if the custodial parent wants to move out of state. *State ex rel. Melling v. Ness*, 1999 ND 73, ¶ 7, 592 N.W.2d 565.

In every relocation dispute, the court must try to accommodate the competing interests of the custodial parent who desires to seek a better life for herself and the children in a different geographical area; the child's interest in maintaining a meaningful relationship with the noncustodial parent; the noncustodial parent's interest in maintaining a meaningful relationship with the child; and finally, the state's interest in protecting the best interests of the child. *Stout v. Stout*, 1997 ND 61, ¶ 32, 560 N.W.2d 903. In determining whether a custodial parent should be allowed to relocate with a child to another state, the best interests of the child is the primary consid-

eration. *Negaard v. Negaard,* 2002 ND 70, ¶ 7, 642 N.W.2d 916.

[¶ 7] The custodial parent has the burden of proving, by a preponderance of the evidence, that a move is in the best interests of the child. *Dickson v. Dickson,* 2001 ND 157, ¶ 7, 634 N.W.2d 76. A trial court's decision whether a proposed move to another state is in the best interests of a child is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Id.* at ¶ 18. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Keller v. Keller,* 1998 ND 179, ¶ 10, 584 N.W.2d 509.

[¶ 8] The relevant factors in evaluating whether a custodial parent should be allowed to move children out of state were enumerated in *Stout* and refined in *Hawkinson v. Hawkinson,* 1999 ND 58, 591 N.W.2d 144. They are:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if reloca-

tion is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson,* at ¶¶ 6, 9. No single factor is dominant, and a minor factor in one case may have a greater impact in another. *Hentz v. Hentz,* 2001 ND 69, ¶ 7, 624 N.W.2d 694.

[¶ 9] Oppegard and Gessler agree that factors two and three are not at issue in this case. Therefore, factors one and four control whether Oppegard should be allowed to relocate to Baxter with the boys.

### A.

[¶ 10] It is apparent from the trial court's decision that the first *Stout* factor was the primary reason for denying Oppegard's motion to relocate. Under the first factor, the trial court must weigh the advantages of the move "while recognizing the importance of maintaining continuity and stability in the custodial family." *Tibor v. Tibor,* 1999 ND 150, ¶ 11, 598 N.W.2d 480 (quoting *Hawkinson,* 1999 ND 58, ¶ 11, 591 N.W.2d 144). A trial court that fails to give sufficient credence to the importance of keeping the custodial family intact commits reversible error. *Id.* Both the economic and noneconomic advantages of the move must be given due weight. *Id.*

The children's best interests are inextricably interwoven with the quality of life of the custodial parent, with whom they live and upon whom they rely emotionally. A move which benefits the health and well-being of a custodial parent is certainly beneficial to the parent's child, and is consequently in the child's best interests. It is axiomatic that a newly-wed couple wants to live together and that the child is benefitted by the satisfaction that the custodial parent derives from residing with her spouse.

*Id.* at ¶ 13 (citations and quotations omitted). It is also relevant if the mother will

have more time to spend with the children because she will not have to work in the new location. *Id.* at ¶ 16. "[T]he benefits a network of close family members would provide" are also considered under the first factor. *Stout,* 1997 ND 61, ¶ 45, 560 N.W.2d 903. A child's preference is relevant in assessing the first factor, and a court may consider it in determining the best interests of the child in the context of a motion to remove the child from the state. *Tishmack v. Tishmack,* 2000 ND 103, ¶¶ 21–22, 611 N.W.2d 204.

[¶ 11] At the time of the original divorce judgment, Oppegard and Gessler stipulated that Oppegard was to have sole physical custody of the boys. A review of the record indicates she continues to be the boys' sole physical custodian while allowing Gessler to have very flexible and liberal visitation with them. Yet, the trial court determined a de facto joint physical custody arrangement existed. This is similar to *Goff v. Goff,* in which we held, under the first *Stout* factor,

> the trial court must weigh the advantages of a move "while recognizing the importance of maintaining continuity and stability in the custodial family." ... We must recognize a relocation request does not involve a custody determination. That determination has previously been made. Because of the emphasis on maintaining the continuity of the custodial arrangement, consideration of factor one must give due weight to the possibility the move will enhance both the economic and noneconomic aspects of the custodial family unit. This the trial court failed to do as is evidenced by its blending of fourth factor considerations into its analysis of the prospective advantages of the move.

Here, the trial court's repeated references to a "co-parenting arrangement

between [the custodial and noncustodial parent]" thwarted that important consideration. There was no "co-parenting arrangement" with regard to primary physical custody; [the mother] was the children's primary physical custodian. This custodial arrangement was stipulated by the parties. The trial court's findings did not properly weigh the advantages to the move in the context of maintaining continuity and stability in the custodial family under the first *Stout* factor.

1999 ND 95, ¶¶ 14–15, 593 N.W.2d 768 (citations omitted).

[¶ 12] In *Stout,* we recognized, "in a motion to relocate, the primary physical custody decision has already been made, and custody is *not* the issue." 1997 ND 61, ¶ 54, 560 N.W.2d 903 (emphasis in original). We observed "that there are cases in which the parents, pursuant to a final decree, share physical custody equally and an original determination of primary custody may be necessary in a motion to relocate by one parent." *Id.* at ¶ 54 n. 7. However, that is not the situation in this case because Oppegard, by stipulation, is the children's sole physical custodian. We agree with the Minnesota Supreme Court that

> Custody provisions contained in a stipulated decree must be accorded a good deal of deference, in that they represent the terms specifically agreed to by the parties and adopted by the court. Where ... the parties have agreed, by stipulated decree, ... and the court has accepted that denomination, the parties will be bound by it. Although this holding will require careful drafting by the parties in the first instance, it will provide more certainty in resolving future disputes.

*Ayers v. Ayers,* 508 N.W.2d 515, 520 (Minn.1993) (evaluating a joint physical

custody situation); *see also Tibor,* 1999 ND 150, ¶ 7, 598 N.W.2d. 480 (agreeing with the Minnesota Supreme Court that "[e]ven where there is joint legal custody or joint legal and physical custody, the statute governing a change of the child's residence applies").

[¶ 13] Giving deference to the stipulated agreement of the parties, we conclude the trial court erred in applying the first *Stout* factor. We have concluded that "[g]enerally, it is not in the best interests of the child to bandy the child back and forth between parents in a rotating physical custody arrangement." *Peek v. Berning,* 2001 ND 34, ¶ 19, 622 N.W.2d 186. However, because children need interaction with both parents, we have encouraged divorced parents to cooperate and allow visitation in order to provide a healthy environment for their children. *See Hendrickson v. Hendrickson,* 2000 ND 1, ¶ 25, 603 N.W.2d 896; *Lapp v. Lapp,* 293 N.W.2d 121, 131 (N.D.1980). In denying Oppegard's motion to relocate with the children, the trial court, in effect, punished her for allowing, either voluntarily or out of necessity, the children to exercise flexible, liberal visitation with Gessler.

[¶ 14] The trial court failed to adequately consider Oppegard's role as the children's custodial parent and blended fourth factor considerations with the prospective advantages of the move under the first *Stout* factor. *See Goff,* 1999 ND 95, ¶ 14, 593 N.W.2d 768. Therefore, we conclude the trial court erroneously applied the law because it did not properly weigh the advantages of the move in the context of maintaining continuity and stability in the custodial family unit. *See id.* at ¶¶ 14–15. Because this is not a case in which we can determine, as a matter of law, the record evidence clearly demonstrates the requested move is in the children's best interests, we reverse and remand in order

for the trial court to properly consider the first *Stout* factor. *See Tibor,* 1999 ND 150, ¶ 28, 598 N.W.2d 480; *Goff,* at ¶ 22. On remand, the trial court may receive additional evidence as needed to evaluate the current circumstances of the parties and the children.

**B.**

[¶ 15] Under the fourth *Stout* factor, a court must consider the negative impact of the move on the noncustodial parent's relationship with the children and the ability to restructure visitation to foster and preserve the relationship. "[A] move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot continue in the existing pattern." *Stout,* 1997 ND 61, ¶ 37, 560 N.W.2d 903.

[¶ 16] In this case, the parties agree Oppegard is not seeking to relocate in order to defeat or deter visitation, and there is no evidence suggesting she would not comply with a restructured visitation schedule. We are left with a definite and firm conviction the trial court erred in finding a visitation schedule could not be devised to preserve the relationship between the boys and Gessler. Although visitation may not be as frequent as it is under the current circumstances, we have held "[a] visitation schedule which provides less frequent, but extended, visitation periods will preserve a noncustodial parent's ability to foster and develop a relationship with the child." *Olson v. Olson,* 2000 ND 120, ¶ 4, 611 N.W.2d 892 (quoting *Tibor,* 1999 ND 150, ¶ 24, 598 N.W.2d 480). "If this were not recognized, the fourth factor would be an unintentional automatic reason to deny relocation." *Keller,* 1998 ND 179, ¶ 16, 584 N.W.2d 509. Further, "[a]n analysis which indicates a trial judge's belief that any restructuring must provide an

equal amount of visitation time after a move as was enjoyed before the move is an incorrect interpretation of the law." *Goff*, 1999 ND 95, ¶ 18, 593 N.W.2d 768.

[¶ 17] We have recognized that "[i]f the court refuses to grant permission for the children to leave the state and the custodial parent leaves, the roles are reversed, but the problem is the same: The move has interfered with or restricted the ability of one parent to exercise visitation rights." *Stout*, 1997 ND 61, ¶ 30, 560 N.W.2d 903 (quoting *Thomas v. Thomas*, 446 N.W.2d 433, 435 (N.D.1989)). Without seeking judicial permission, Oppegard could move further than 210 miles from Grand Forks and remain in North Dakota. *See* N.D.C.C. § 14–09–07 (requiring a custodial parent to seek judicial permission in order to change the residence of the child to another state). It would be inconsistent with our prior decisions to conclude, absent unique circumstances not present here, an adequate visitation schedule cannot be established in this case. *See, e.g., Tishmack*, 2000 ND 103, ¶¶ 18–20, 611 N.W.2d 204 (concluding trial court did not clearly err by finding the relationship between the child and noncustodial parent would in all probability be destroyed where there was evidence the child experienced anxiety during extended visitation); *Tibor*, 1999 ND 150, ¶ 26, 598 N.W.2d 480 (concluding the trial court's finding that visitation could not be restructured to preserve and foster the children's relationship with the noncustodial parent if the children were allowed to relocate to Georgia was clearly erroneous). If, after reconsidering the first factor, the trial court allows Oppegard to relocate with the boys, it should establish an appropriate visitation schedule.

[¶ 18] We reverse and remand for further proceedings in accordance with this opinion.

[¶ 19] CAROL RONNING KAPSNER, MARY MUEHLEN MARING and WILLIAM A. NEUMANN, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 20] I respectfully dissent.

[¶ 21] The majority asserts, at ¶ 13:

In denying Oppegard's motion to relocate with the children, the trial court, in effect, punished her *for allowing,* either voluntarily or out of necessity, the children to exercise flexible, liberal visitation with Gessler.

(Emphasis added). In so stating, the majority reflects the view that the child belongs to the mother and that flexible, liberal visitation is hers to grant or withhold. I do not believe that the mother "owns" the child, nor do I believe that liberal visitation by the father is allowed only as a matter of "grace" from the mother (or the courts). Parents have a fundamental, natural right to their children, including the right of companionship. *In re T.K.,* 2001 ND 127, ¶ 12, 630 N.W.2d 38; *State v. Ehli,* 2003 ND 133, ¶ 7, 667 N.W.2d 635.

Both custodial and noncustodial parents have a right to contact with their children. N.D.C.C. § 14–05–22(2).

. . . .

The right of noncustodial parents to visitation is not just a statutory right—it is a right of constitutional magnitude. [*Berg v. Berg,* 2002 ND 69, ¶¶ 30–31, 642 N.W.2d 899 (Sandstrom, J., concurring in the result)]. Unless restricted or forfeited by serious misconduct of the noncustodial parent, noncustodial-parent visitation rights must be enforced by court action if necessary. *See id.* at ¶ 32; N.D.C.C. § 14–09–06.6.

*Sweeney v. Sweeney,* 2002 ND 206, ¶¶ 28, 30, 654 N.W.2d 407 (Sandstrom, J., dissenting).

[¶ 22] The majority asserts, at ¶ 14:

The trial court failed to *adequately consider* Oppegard's role as the children's custodial parent and blended fourth factor considerations with the prospective advantages of the move under the first *Stout* factor. *See Goff [v. Goff]*, 1999 ND 95, ¶ 14, 593 N.W.2d 768. Therefore, we conclude the trial court erroneously applied the law because it did not properly weigh the advantages of the move in the context of maintaining continuity and stability in the custodial family unit.

(Emphasis added). In so stating, the majority highlights that it is "re-weighing" and substituting its judgment for that of the trial court. In fact, the trial court clearly considered and fairly weighed the factors. The trial court wrote:

Of course, the advantage of keeping the family together is also considerable, with the family being defined as the plaintiff, her fiancé, and the boys, plus his children from a former marriage that live in the Brainerd area.

The disadvantages of the move are also considerable. The boys would be moved from the community, school, friends and extended family members that they have known all of their lives. It would also involve a change in churches, from the Sharon Lutheran Church in Grand Forks, to the Evangelical Free Church in Brainerd. The boys said in the interview that they did not feel comfortable in the Evangelical Free Church compared to the church home of Sharon Lutheran in Grand Forks, where they also had many friends whose parents were active in the music ministry of the church.

The boys would also be deprived of their ability to live close to Lauren, their sister, and they would lose the close contact with their father on an almost daily basis, and the contact with other extended family members. In other words, the stability of the boys' social and educational infrastructure would be lost, as they know it. The boys would be faced with significant adjustments to make if they moved out of the community and the effect could be "huge", in the opinion of one of the school counselors.

[¶ 23] The trial court clearly and carefully considered Oppegard's role as the children's custodial parent and considered both the advantages and disadvantages of the move. *See also In re Marriage of Lamusga*, 32 Cal.4th 1072, 12 Cal.Rptr.3d 356, 88 P.3d 81, 94 (2004) ("[T]here is nothing in the record before us that indicates that the superior court failed to consider the children's 'interest in stable custodial and emotional ties' with their mother.").

[¶ 24] I would affirm the well-reasoned decision of the trial court.

[¶ 25] Dale V. Sandstrom.