2005 ND 66
**Bob L. DVORAK, Plaintiff and Appellee**

v.

**Kathleen A. DVORAK, Defendant and Appellant.**

**No. 20040222.**

Supreme Court of North Dakota.

March 23, 2005.

Ronald A. Reichert of Reichert & Herauf, P.C., Dickinson, N.D., for plaintiff and appellee.

Suzanne M. Schweigert of Smith Bakke Oppegard Porsborg Wolf, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Kathleen Dvorak appeals a divorce judgment from the district court awarding her custody of the children, child support, spousal support, and a portion of the marital property and requiring her to move back to North Dakota from Albuquerque, New Mexico, with the children. Concluding the district court failed to properly analyze the relocation factors and erred in dividing the marital property, we affirm in part, reverse in part, and remand to the district court the issues of the relocation of the children, the distribution of marital property, and the payment of attorney's fees.

I

[¶ 2] Kathleen and Bob Dvorak were married on September 8, 1990, and divorced on April 27, 2004. The parties lived together for two and a half years before they were married, and they had five children from their relationship.

[¶ 3] In 2002, Kathleen Dvorak applied for admittance to a massage therapy school in Albuquerque, New Mexico, and was accepted. She had her husband sign a statement that she could go to New Mexico with their five children while obtaining her degree. She moved with the children to New Mexico in December 2002 so that the children could begin school in the Albuquerque school system at the beginning of the school semester. At the time of the move, she was intending to come back to

North Dakota after she obtained her massage therapy degree.

[¶ 4] Bob Dvorak filed for a divorce in March 2003 while Kathleen Dvorak was in New Mexico. Kathleen Dvorak moved for, and the district court granted, an interim order giving her custody of the children and allowing her to remain in New Mexico with the children during the pendency of the divorce.

[¶ 5] The case was tried on March 16, 2004. At the time of the trial, Bob Dvorak was a 43–year–old, self-employed farmer and rancher. He attended school through the tenth grade but did not graduate from high school. Kathleen Dvorak was 46 years old and had a general equivalency diploma, a dental assistant degree, and a two-year business degree, and she had completed her massage therapy degree by the time of the trial.

[¶ 6] The district court granted the parties a divorce on the grounds of irreconcilable differences. The district court awarded custody of the minor children to Kathleen Dvorak and awarded reasonable visitation, including every other weekend, alternating holidays, and six weeks during the summer, to Bob Dvorak. The district court ordered Bob Dvorak to pay $510 per month in child support and allowed him to claim the children as dependents for tax purposes. The district court awarded Kathleen Dvorak spousal support in the amount of $1,000 per month for four years.

[¶ 7] The district court awarded property valued at $881,744 to Bob Dvorak and property worth $8,715.92 to Kathleen Dvorak. The district court stated it considered the *Ruff–Fischer* guidelines in making this property division and recognized the division created a substantial disparity between the parties. It noted that it gave specific weight to when the property was accumulated and stated that it was "appropriate for the Court to consider all the time the parties have lived together in dividing their marital property." The district court found the net worth of Bob Dvorak in 1988, the year the parties began living together, was $644,647, and the couple's net worth at the time of the trial had increased by $237,097. The district court then awarded an "offsetting monetary award of $114,190.00" to Kathleen Dvorak.

[¶ 8] Kathleen Dvorak appeals the district court judgment.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01, 28–27–02. The appeal was timely under N.D.R.App.P. 4(a).

II

[¶ 10] Kathleen Dvorak argues the district court improperly found it was not in the children's best interest to move to New Mexico.

[¶ 11] The custodial parent has the burden of proving by a preponderance of the evidence that a move is in the best interest of the child. *Dickson v. Dickson,* 2001 ND 157, ¶ 7, 634 N.W.2d 76. A district court's decision whether a proposed move to another state is in the best interest of a child is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Id.* at ¶ 8.

[¶ 12] North Dakota statute states:

A parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree. A court order is not required if the noncustodial parent:

1. Has not exercised visitation rights for a period of one year; or

2. Has moved to another state and is more than fifty miles [80.47 kilometers] from the residence of the custodial parent.

N.D.C.C. § 14–09–07. The purpose of the relocation statute is to protect the noncustodial parent's visitation rights when the custodial parent wants to move out of state with the children. *State ex rel. Melling v. Ness*, 1999 ND 73, ¶ 7, 592 N.W.2d 565.

[¶ 13] Kathleen Dvorak argues the district court did not have subject matter jurisdiction, because Bob Dvorak waived his right to contest the move by initially allowing her to move to New Mexico with the children. Although Bob Dvorak signed a paper stating he agreed that his wife could take the children to New Mexico, he argues he did not want to sign the paper but felt he had no choice and no legal way to stop her from moving without getting a divorce.

[¶ 14] Subject matter jurisdiction allows a district court to adjudicate an action if the constitution and laws authorize it to hear the type of case to which the particular action belongs. *Larson v. Dunn*, 474 N.W.2d 34, 38 (N.D.1991). A judgment or order entered by a district court that does not have the requisite jurisdiction is void. *Id.* at 39. District courts in North Dakota have broad jurisdictional authority, including authority to decree a divorce. N.D.C.C. §§ 27–05–06, 14–05–01(2).

[¶ 15] Bob Dvorak signed a paper allowing Kathleen Dvorak and the children to move to New Mexico while she was obtaining a massage therapy degree. Both Kathleen and Bob Dvorak expected that she would return with the children after she completed her studies. Bob Dvorak's signing of the paper did not waive his right to object to Kathleen Dvorak's relocating with the children permanently, and the district court did not lose its jurisdiction over the issue.

III

[¶ 16] Kathleen Dvorak argues the district court erred in finding the move was not in the best interests of the children.

In every relocation dispute, the court must try to accommodate the competing interests of the custodial parent who desires to seek a better life for herself and the children in a different geographical area; the child's interest in maintaining a meaningful relationship with the noncustodial parent; the noncustodial parent's interest in maintaining a meaningful relationship with the child; and finally, the state's interest in protecting the best interests of the child.

*Stout v. Stout*, 1997 ND 61, ¶ 32, 560 N.W.2d 903. "The relevant factors in evaluating whether a custodial parent should be allowed to move children out of state were enumerated in *Stout* and refined in *Hawkinson v. Hawkinson*, 1999 ND 58, 591 N.W.2d 144." *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 8, 681 N.W.2d 762. They are:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis

for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Id.* (quoting *Hawkinson,* at ¶¶ 6, 9). "No single factor is dominant, and a minor factor in one case may have a greater impact in another." *Id.*

[¶ 17] The district court held that Kathleen Dvorak did not meet her burden of proof to relocate to New Mexico with the children. It reasoned that it was only Kathleen Dvorak's subjective opinion that it was better for her and the children to live in New Mexico. The district court found that she had not offered any "evidence of employment opportunities in North Dakota or the lack thereof compared to Albuquerque, New Mexico." The district court denied her request to move with the children.

[¶ 18] The district court did not set forth its analysis of the four relocation factors announced by a majority of this Court in *Stout* and modified in *Hawkinson.* Although it may have considered all of the factors, it discussed only a portion of the first factor relating to the economic benefit of the move. A majority of this Court has said the first factor includes not only the economic advantages of the move but also the noneconomic advantages for enhancing the custodial family's life. *Tibor v. Tibor,* 1999 ND 150, ¶ 11, 598 N.W.2d 480.

[¶ 19] In determining whether moving to another state is in a child's best interests, the district court must analyze the four factors. *Olson v. Olson,* 2000 ND 120, ¶ 5, 611 N.W.2d 892. The district court did not enunciate its analysis of the noneconomic benefits of the move, and it did not set forth its analysis of the three remaining relocation factors. The district court could have arrived at the same conclusion had it addressed all the relocation factors, but we do not know it would have. We are not in a position to retry or reweigh the relocation factors. *Oppegard–Gessler,* 2004 ND 141, ¶ 22, 681 N.W.2d 762 (Sandstrom, J., dissenting); *Tibor,* 1999 ND 150, ¶ 43, 598 N.W.2d 480 (Sandstrom, J., dissenting). Because we have said that a district court must analyze all four factors, the district court erred in neglecting to address each one.

IV

[¶ 20] Kathleen Dvorak argues the district court committed clear error in the division of the marital property. When a divorce is granted, the district court makes an equitable distribution of the property and debts of the parties. N.D.C.C. § 14–05–24(1). We review a district court's determinations regarding the division of property as findings of fact, and we will not reverse unless the findings are clearly erroneous. *Hogan v. Hogan,* 2003 ND 105, ¶ 14, 665 N.W.2d 672. "Marital property valuations within the range of the evidence are not clearly erroneous." *Amsbaugh v. Amsbaugh,* 2004 ND 11, ¶ 12, 673 N.W.2d 601 (citations omitted). "The district court is in a better position to judge credibility and observe demeanor and to determine the true facts regarding property value." *Id.*

[¶ 21] "When distributing marital property, all of the assets must be considered to ensure the division is equitable." *Id.* at ¶ 21. After a district court "has included all of the assets in the marital estate, it considers the *Ruff–Fischer* guidelines in its distribution of the assets to the parties." *Bladow v. Bladow,* 2003 ND 123, ¶ 7, 665 N.W.2d 724. The *Ruff–Fischer* guidelines direct the district court to consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (citations omitted). The district court "is not required to make specific findings, but it must specify a rationale for its determination." *Id.* (citations omitted).

■■■ [¶ 22] The district court distributed $881,744 worth of property to Bob Dvorak and $8,715.92 to Kathleen Dvorak. The district court said:

> This creates a substantial disparity. In making the division, the Court has considered the *Ruff–Fischer* guidelines, specifically, the Court has given weight to when the property was accumulated. According to the evidence, the plaintiff had a net worth of $644,647 in 1988, when they started to live together. It is appropriate for the Court to consider all the time the parties have lived together in dividing their marital property. Since 1988, his net worth has increased by $237,097. Thus, for there to be an equitable division, the defendant needs an offsetting monetary award of $114,190.00 to be paid within 90 days from the entry of the judgment.

[¶ 23] The district court did not articulate its reason for using the net income amounts, and it did not explain why there was a substantial disparity in the property amounts. We have said that a property division need not be equal, but a substantial disparity must be explained. *Amsbaugh,* 2004 ND 11, ¶ 23, 673 N.W.2d 601. Bob Dvorak argues that if the district

court had awarded any more property to Kathleen Dvorak, it would have put the farm under financial duress. He argues Kathleen Dvorak did not show how she could receive more property while keeping the family farm intact. We have recognized the importance of preserving the viability of a business operation, such as a family farm, and the potential for economic hardship if that type of entity is divided. *Linrud v. Linrud,* 1998 ND 55, ¶ 13, 574 N.W.2d 875. We have effectively recognized that liquidation of an ongoing farming operation is ordinarily a last resort. *Gibbon v. Gibbon,* 1997 ND 210, ¶ 7, 569 N.W.2d 707. In its findings of fact and conclusions of law, however, the district court does not enunciate the financial hardship to the farm. When we cannot discern from the findings of fact or the record before us whether or not the property distribution is clearly erroneous, we must remand the case for further specific findings on the issue. *Pankow v. Pankow,* 371 N.W.2d 153, 157 (N.D.1985).

[¶ 24] Because the district court did not sufficiently explain the inequitable distribution, we remand this issue to the district court.

## V

■■■ [¶ 25] The district court ordered Bob Dvorak to pay $510 per month in child support for the five minor children. Kathleen Dvorak argues the district court erred in calculating the child support obligation. This Court uses the following review for child support determinations:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as

a matter of law when it fails to comply with the requirements of the Guidelines. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215 (citations omitted).

[¶ 26]   Kathleen Dvorak argues that the district court improperly used Bob Dvorak's income statements from the previous five years in determining his net monthly income. She argues his income statements do not reflect proceeds received from the sale of cattle in 2003 in the amount of $116,194. This income was not reflected on Bob Dvorak's tax returns because the sale was in response to a disaster and qualified for special treatment under the Internal Revenue Code.

[¶ 27]   The Child Support Guidelines state that "[n]et income from self-employment means total income, *for internal revenue service purposes*, of the obligor . . . ." N.D. Admin. Code § 75–02–04.1–05(1) (emphasis added); *Torgerson v. Torgerson*, 2003 ND 150, ¶ 15, 669 N.W.2d 98. The Guidelines recognize that self-employment "activities may experience significant changes in production and income over time." N.D. Admin. Code § 75–02–04.1–05(4). "To the extent that information is reasonably available, the average of the most recent five years of each self-employment activity, if undertaken on a substantially similar scale, must be used to determine self-employment income." *Id.*

[¶ 28]   We have upheld circumstances in which a district court found that averaging tax returns from five years before the divorce provided a reasonable reflection of the obligor's income. *Torgerson*, 2003 ND 150, ¶ 20, 669 N.W.2d 98. In the case at bar, the district court used the five years of tax returns preceding the divorce to calculate Bob Dvorak's yearly income. We conclude this accurately reflects Bob Dvorak's income for the purpose of calculating his child support obligation.

## VI

[¶ 29]   Kathleen Dvorak argues the district court erred in awarding Bob Dvorak the income tax dependency exemption. A district court's granting of tax dependency exemptions is reviewed under the clearly erroneous standard. *Lukenbill v. Fettig*, 2001 ND 47, ¶ 13, 623 N.W.2d 7. "There are no findings of fact supporting the judge's decision, but the reasons for it can be determined from the record." *Wigginton v. Wigginton*, 2005 ND 31, ¶ 18, 692 N.W.2d 108.

[¶ 30]   The district court ordered Bob Dvorak to pay $1,000 in spousal support and $510 in child support. From our review of the record, "we are not left with a definite and firm conviction the court made a mistake," *Mahoney v. Mahoney*, 1997 ND 149, ¶ 21, 567 N.W.2d 206, in allocating the dependency exemption to Bob Dvorak.

## VII

[¶ 31]   Kathleen Dvorak argues she is entitled to attorney's fees. "At any time during a pending divorce, the court may award attorney fees under N.D.C.C. § 14–05–23." *Buchholz v. Buchholz*, 1999 ND 36, ¶ 18, 590 N.W.2d 215. "An award of attorney fees will not be overturned unless the court abused its discretion." *Id.*

[¶ 32]   Attorney's fees may be awarded in a divorce action when one spouse has the need for them and the other spouse has the ability to pay. *Id.* at ¶ 19. The district court should consider factors such as " 'the property owned by each party,

their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case.'" *Id.* (quoting *Quamme v. Bellino,* 540 N.W.2d 142, 148 (N.D.1995)).

[¶ 33] The district court and this Court "have concurrent jurisdiction to award attorney's fees for an appeal in a divorce." *Martin v. Martin,* 450 N.W.2d 768, 771 (N.D.1990). We prefer, however, that the district court "determine the amount of attorney's fees for a spouse on a divorce appeal." *Id.* We therefore direct the district court to consider whether attorney's fees are appropriate in this case.

## VIII

[¶ 34] We affirm in part and reverse in part and remand the district court judgment for further proceedings on the issues of the relocation of the children, the distribution of marital property, and payment of attorney's fees.

[¶ 35] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 36] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.