2006 ND 171

**Bob L. DVORAK, Plaintiff, Appellee and Cross–Appellant**

v.

**Kathleen A. DVORAK, Defendant, Appellant and Cross–Appellee.**

No. 20050405.

Supreme Court of North Dakota.

July 27, 2006.

Ronald A. Reichert, Reichert Law Office, Grand Forks, N.D., for plaintiff, appellee and cross-appellant.

Suzanne M. Schweigert, Smith Bakke Porsborg & Schweigert, Bismarck, N.D., for defendant, appellant and cross-appellee.

CROTHERS, Justice.

[¶ 1] Kathleen Dvorak appeals and Bob Dvorak cross-appeals from a divorce judgment, entered after remand in *Dvorak v. Dvorak*, 2005 ND 66, 693 N.W.2d 646, in which the district court divided the parties' marital property and denied her request to relocate with her children from North Dakota to Albuquerque, New Mexico. We dismiss the cross-appeal, affirm the district court's relocation decision and property distribution, and remand for consideration of attorney's fees for this appeal.

I

[¶ 2] Bob and Kathleen Dvorak were married in 1990, after they lived together for two and one-half years on a family farm near Dickinson, which Bob Dvorak brought into their relationship. They had five children during their relationship and marriage. At the time of the March 2004 divorce trial, Bob Dvorak was a 43 year-old self-employed farmer and rancher with a tenth grade education. Kathleen Dvorak was 46 years old and had a general equivalency degree, a dental assistant degree, a two-year business degree, and a degree in massage therapy. When the couple met, Kathleen Dvorak was working full-time at the Social Security Office in Dickinson. After the birth of the couple's second child in March 1991, Kathleen Dvorak quit her job at the Social Security Office and assumed the primary responsibility of caring for the children.

[¶ 3] In 2002, Kathleen Dvorak was accepted into massage therapy school in Albuquerque and Bob Dvorak signed a document that said she could take their five minor children to New Mexico while she pursued her massage therapy degree. She moved with the children to New Mexico in December 2002. According to Kathleen Dvorak, she intended to move back to North Dakota in August 2003, after she received her massage therapy degree.

[¶ 4] Bob Dvorak sued Kathleen Dvorak for divorce in March 2003, while she was pursuing her degree and living in New Mexico with the children. The district court entered an interim order allowing Kathleen Dvorak to remain in New Mexico with the children during the divorce proceeding. The court subsequently granted the parties a divorce, awarded Kathleen Dvorak custody of the minor children, and granted Bob Dvorak reasonable visitation. The court denied Kathleen Dvorak's request to relocate with the children to New Mexico and distributed the parties' marital estate, which the court found had a total net worth of $890,409.92. The court awarded $881,744 worth of property to Bob Dvorak and $8,715.92 to Kathleen Dvorak. The court said the parties had experienced an increase in net worth of $237,097 since their relationship began in 1988, and to make the distribution equitable, the court awarded Kathleen Dvorak an offsetting monetary award of $114,190. The court also ordered Bob Dvorak to pay Kathleen Dvorak spousal support of $1,000 per month for four years and child support of $510 per month.

[¶ 5] In *Dvorak*, 2005 ND 66, ¶¶ 18–19, 23–24, 693 N.W.2d 646, we concluded the district court failed to properly analyze the factors for determining whether a custodial parent should be allowed to move children out of the state and failed to adequately explain a substantial disparity in the distribution of the parties' marital property. We said the district court did not set forth its analysis on the four relocation factors from *Stout v. Stout*, 1997 ND 61, ¶ 32, 560 N.W.2d 903, and *Hawkin-*

*son v. Hawkinson,* 1999 ND 58, ¶¶ 6, 9, 591 N.W.2d 144, and the court discussed only a portion of the first factor relating to the economic benefit of the move. *Dvorak,* at ¶ 18. We concluded the district court erred in failing to consider each of the four relocation factors. *Id.* We said the court could have arrived at the same conclusion in denying Kathleen Dvorak's request to relocate with the children if it had addressed all four of the relocation factors, but we could not say that it would have reached that determination after considering all four factors. *Id.* at ¶ 19. In reviewing the district court's property distribution, we said the court did not explain its rationale for using net income amounts and for the substantial disparity in the property award. *Id.* at ¶ 23. We acknowledged Bob Dvorak's argument about placing the family farm in financial duress if the district court had awarded any more property to Kathleen Dvorak, but we said the court's findings did not enunciate the financial hardship to the farm. *Id.* We remanded to the district court the issues regarding the relocation of the children, the distribution of the parties' marital property, and the payment of Kathleen Dvorak's attorney's fees for that appeal. *Id.* at ¶ 34.

[¶ 6] On remand, the district court made further findings on the relocation factors and again denied Kathleen Dvorak's request to relocate with the children to New Mexico. The district court also made further findings on the distribution of the parties' marital property, and the court ultimately awarded Kathleen Dvorak $6,000 in attorney's fees for the previous appeal.

## II

[¶ 7] Kathleen Dvorak initially claims the district court failed to hold an evidentiary hearing on remand. She claims she

"informally" requested and was denied an opportunity to present new evidence.

[¶ 8] In *Kautzman v. Kautzman,* 2000 ND 116, ¶¶ 6–8, 611 N.W.2d 883, we considered a similar claim about the denial of the opportunity to present additional evidence in a case that had been remanded for further proceedings. We said when we reverse and remand for a district court to address an issue or to redetermine a matter, unless otherwise specified, the district court may decide the case based on the evidence already before it or may take additional evidence. *Id.* at ¶ 7. We said a district court's decision about hearing additional evidence will be reversed on appeal only if the court abused its discretion. *Id.*

[¶ 9] In *Dvorak,* 2005 ND 66, ¶ 34, 693 N.W.2d 646, we did not explicitly require the district court to take additional evidence. On this record, we cannot say the district court abused its discretion in making further findings without hearing additional evidence.

## III

[¶ 10] Kathleen Dvorak argues the district court clearly erred in denying her request to change the children's residence to New Mexico. She argues the court did not give due weight to the continuity and stability of the custodial family and to other non-economic factors. She also claims the court clearly erred in giving more credibility to Bob Dvorak's testimony than to a custody investigator's testimony.

[¶ 11] A district court's decision on relocation is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *See Stout,* 1997 ND 61, ¶ 7, 560 N.W.2d 903. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there

is some evidence to support the finding, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *Id.* Under the clearly erroneous standard of review, we do not reweigh the evidence or reassess credibility when there is evidence to support a district court's findings, and we will not reverse a district court's decision merely because we might have reached a different result. *Hentz v. Hentz*, 2001 ND 69, ¶ 6, 624 N.W.2d 694. Moreover, a choice between two permissible views of the weight of the evidence is not clearly erroneous. *Tishmack v. Tishmack*, 2000 ND 103, ¶ 7, 611 N.W.2d 204.

■■■■ [¶ 12] Section 14–09–07, N.D.C.C., provides, "[a] parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent." In *Stout*, 1997 ND 61, ¶ 32, 560 N.W.2d 903, we recognized relocation disputes require that courts try to accommodate the competing interests of the custodial parent who desires to seek a better life for himself or herself and the child in a different geographical area, the child's interest in maintaining a meaningful relationship with the noncustodial parent, the noncustodial parent's interest in maintaining a meaningful relationship with the child, and the state's interest in protecting the best interests of the child. A court's primary consideration in relocation cases is whether it is in the child's best interest to move to another state. *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 7, 681 N.W.2d 762. The custodial parent has the burden to prove, by a preponderance of the evidence, that the move is in the child's best interest. *Id.*

■■■■ [¶ 13] In *Dvorak*, 2005 ND 66, ¶ 16, 693 N.W.2d 646 (quoting *Oppegard–Gessler*, 2004 ND 141, ¶ 8, 681 N.W.2d 762), we outlined the relevant *Stout–Hawkinson* factors for evaluating whether a custodial parent should be allowed to move a child to another state:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

[¶ 14] Under the first factor, a district court must weigh the advantages of the move "while recognizing the importance of maintaining continuity and stability in the custodial family." *Tibor v. Tibor*, 1999 ND 150, ¶ 11, 598 N.W.2d 480 (quoting *Hawkinson*, 1999 ND 58, ¶ 11, 591 N.W.2d 144). No single factor is dominant, however, and a minor factor in one case may have greater impact in another case. *Dvorak*, 2005 ND 66, ¶ 16, 693 N.W.2d 646.

[¶ 15] In the prior appeal, we remanded because the district court only discussed a portion of the first factor relating to the economic benefit of the move without making findings on the other three factors, and we recognized the first factor includes not only the economic advantage of the move, but also the non-economic advantages for enhancing the custodial

family's life. *Dvorak*, 2005 ND 66, ¶ 18, 693 N.W.2d 646.

[¶ 16] On remand, the district court discussed and analyzed all four relocation factors. The court found Kathleen Dvorak had not sustained her burden of proving there were non-economic advantages to the children living in New Mexico. The court said although the children were involved in activities in New Mexico, they also were involved in a substantial number of activities in North Dakota. The court also questioned Kathleen Dvorak's credibility and motive on some issues, including visitation and relocation. The court found Kathleen Dvorak had interfered with Bob Dvorak's visitation, she would not let him talk to the children on the phone without listening to the conversation, she blocked phone calls from him for two weeks, he was unable to contact the children about 500 times while she had caller identification on her telephone, and she failed to inform him about the children's activities. The court also found evidence of alienation. The court found Kathleen Dvorak's motive for relocation was to frustrate Bob Dvorak's visitation, and his motive for opposing the move was a genuine interest in being close to his children and having them involved with him on the farm. The court also found relocation would have a negative impact on Bob Dvorak's relationship with his children. The court's decision was based primarily on credibility assessments, including the court's determination that Kathleen Dvorak's credibility on visitation and relocation issues was questionable.

[¶ 17] On appeal, Kathleen Dvorak essentially asks this Court to reweigh the relocation factors and the witnesses' credibility. However, we do not reweigh the evidence or reassess credibility of witnesses, and we will not reverse a district court's decision merely because we

may have reached a different result. *Hentz*, 2001 ND 69, ¶ 6, 624 N.W.2d 694. As we recognized in the prior appeal, "[t]he district court could have arrived at the same conclusion had it addressed all the relocation factors, but we do not know it would have." *Dvorak*, 2005 ND 66, ¶ 19, 693 N.W.2d 646. On remand, the district court followed our instructions from the prior appeal, and on this record, we are not left with a definite and firm conviction that the district court made a mistake in analyzing and weighing the relocation factors. We therefore conclude the court did not clearly err in denying Kathleen Dvorak's request to relocate with the children to New Mexico.

IV

[¶ 18] Kathleen Dvorak argues the district court clearly erred in distributing the parties' marital property. She argues the court erred in dividing the increase in net worth of the marital property during the marriage. She asserts the court should have started with an equal division of the parties' net worth and made any adjustments from that figure. She concedes the court made findings for each *Ruff–Fischer* factor, but she argues the findings still do not support the substantial disparity in the court's distribution of the property.

[¶ 19] When a divorce is granted, a district court must make an equitable distribution of the parties' property and debts under N.D.C.C. § 14–05–24(1). *Dvorak*, 2005 ND 66, ¶ 20, 693 N.W.2d 646. We review a district court's determinations regarding the distribution of property as a finding of fact, and we will not reverse unless the court's findings are clearly erroneous. *Dvorak*, at ¶ 20. We have said that a property division need not be equal to be equitable, but a substantial disparity must be explained. *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 23, 673 N.W.2d

601. In distributing marital property, all the assets must be considered to ensure that a division is equitable. *Dvorak*, at ¶ 21. After a district court has included all the assets in the marital estate, it must consider the *Ruff–Fischer* guidelines in its distribution of the parties' assets. *Bladow v. Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724. A district court is not required to make specific findings on each *Ruff–Fisher* guideline, but it must specify the rationale for its determination. *Bladow*, at ¶ 7. The *Ruff–Fischer* guidelines require the district court to consider:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Bladow*, at ¶ 7.

[¶ 20] In *Dvorak*, 2005 ND 66, ¶¶ 22–23, 693 N.W.2d 646, we said the district court did not articulate its reason for using the net income amount and it did not explain the substantial disparity in the property distribution. We therefore remanded to the district court for further findings. *Id.* at ¶¶ 24–25. We rejected Bob Dvorak's argument that the farm would be put in financial distress if Kathleen Dvorak was awarded more property, because the district court did not enunciate the financial hardship to the farm in its findings of fact and conclusions of law and we were unable to discern from the findings of fact or the record whether the property distribution was clearly erroneous. *Id.* at ¶ 24.

[¶ 21] On remand, the district court made findings on each *Ruff–Fischer* factor. The court found a substantial part of the marital estate was acquired before the marriage and an equal distribution of the property would be inequitable because it would destroy Bob Dvorak's ability to earn a living and provide necessary support to Kathleen Dvorak and the children. The court explained it has been difficult for Bob Dvorak to earn a living from the farm and ranch operation and his living expenses have come from the equity in the property. The court found the increase in net farm worth during the parties' relationship and marriage was $223,757. The court's findings of fact state that Bob Dvorak

> owned 1760 acres of land prior to the marriage and acquired 1,640 after the marriage for a total marital estate of 3,400. Real estate has a current value of $269.71 per acre. If that is applied to the property acquired during the marriage, the property would have a current value of $442,324, without the debt. The marital share of the debt for the 1,640 acres would be $176,021. Considering all the factors, findings and transfers, the Court awards total cash of $213,000 to [Kathleen Dvorak], which considers [her] contribution to the martial [sic] estate. Previously the Court awarded her $114,000. This would be an additional $98,981.

[¶ 22] Although the parties dispute the number of acres acquired after they began their relationship, the record generally reflects the land was acquired by trade and gifts between Bob Dvorak and members of his family. Although the exact number of acres acquired during the parties' relationship and marriage is not clear and varies between the court's memorandum decision and findings of fact, the findings of fact govern. *See Stillwell v.*

*Cincinnati Inc.,* 336 N.W.2d 618, 620 n. 3 (N.D.1983). The parties' financial statements reflect the value of the farm and the net increase in value during the parties' relationship from which the district court decided to award property based on the net increase in value of the operation during the parties' relationship and marriage. The court began by awarding each party the property and debts in their possession, which resulted in a net award of $881,744 to Bob Dvorak and a net award of $8,715.92 to Kathleen Dvorak. The court again recognized its award created a substantial disparity and said since the time the parties began their relationship in 1988, the increase in net farm worth was $223,757 and the marital estate had increased by $237,097. The court awarded Kathleen Dvorak an offsetting monetary award of $213,000. The court also awarded Kathleen Dvorak an undivided half interest in all minerals owned by the parties. The district court's explanation for the disparity in its property distribution is sufficient for us to understand the rationale for its determination and follows our directions from the prior appeal. On this record, we are not left with a definite and firm conviction the court made a mistake in its property distribution. We therefore conclude the court's property distribution is not clearly erroneous.

## V

[¶ 23] Kathleen Dvorak argues she is entitled to attorney's fees for this appeal. Bob Dvorak has not responded to her request for attorney's fees, and instead he argues he should be awarded his attorney's fees for this appeal. In her reply brief, Kathleen Dvorak again requests her attorney's fees for this appeal and also claims she should be awarded $1,000 in sanctions for Bob Dvorak's failure to cite to the record in his appellate brief.

[¶ 24] We deny Kathleen Dvorak's request for sanctions. Under N.D.C.C. § 14–05–23, attorney's fees may be awarded for an appeal in a divorce action. *Simburger v. Simburger,* 2005 ND 139, ¶¶ 21, 23, 701 N.W.2d 880. In deciding whether to award attorney fees under N.D.C.C. § 14–05–23, a court must balance the parties' needs and ability to pay and should consider the property owned by each, their relative incomes, whether property is liquid or fixed assets, and whether the actions of either party have increased the time spent on the case. *Dvorak,* 2005 ND 66, ¶ 32, 693 N.W.2d 646. Although a district court and this Court have concurrent jurisdiction to award attorney fees for an appeal in a divorce, we prefer that the district court decide attorney fees for a divorce appeal. *Id.* at ¶ 33. We therefore remand to the district court to determine whether attorney fees for this appeal are appropriate under N.D.C.C. § 14–05–23.

## VI

[¶ 25] Although Bob Dvorak has cross-appealed from the judgment, in his appellate brief he states "that appeal is now moot." We therefore dismiss his cross-appeal.

## VII

[¶ 26] We affirm the district court's relocation decision and property distribution, and we remand for consideration of attorney fees.

[¶ 27] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 28] I concur in parts I, II, III, and V of the majority opinion and respectfully

dissent from part IV. I am of the opinion the district court clearly erred in distributing the parties' marital property.

[¶ 29] "In reviewing a property distribution, we start with the assumption the property should be divided equally and, while a property division need not be equal to be equitable, the district court must explain any 'substantial disparity.'" *Linrud v. Linrud*, 552 N.W.2d 342, 345 (N.D. 1996). We remanded this case in *Dvorak v. Dvorak*, 2005 ND 66, 693 N.W.2d 646, with instructions to the district court. The district court in its May 28, 2004, Findings of Fact, Conclusions of Law, and Order for Judgment said:

> This creates a substantial disparity. In making the division, *the Court has considered the Ruff–Fischer guidelines, specifically, the Court has given weight to when the property was accumulated.* According to the evidence, the plaintiff had a net worth of $644,647 in 1988, when they started to live together. It is appropriate for the Court to consider all the time the parties have lived together in dividing their marital property. Since 1988, his net worth has increased by $237,097. Thus, for there to be an equitable division, the defendant needs an offsetting monetary award of $114,190.00 to be paid within 90 days from the entry of the judgment.

(Emphasis added.) We held "[t]he district court did not articulate its reason for using the net income amounts, and it did not explain why there was a substantial disparity in the property amounts." *Dvorak*, 2005 ND 66, ¶ 23, 693 N.W.2d 646. We remanded with instructions to the district court to provide further specific findings on the issue and to sufficiently explain the inequitable distribution. *Id.* at ¶¶ 23–24. However, although on remand the district court considered the *Ruff–Fischer* guidelines in its Findings of Fact, Conclusions of

Law, and Order for Judgment dated September 22, 2005, it again relied heavily on the fact that Bob Dvorak had brought "substantial assets" into the marriage. The district court also again concluded that "[s]ince 1988, [Bob Dvorak's] net worth has increased by $237,097. Thus, for there to be an equitable division, the defendant needs an offsetting monetary award of $213,000.00 an increase of $98,981.00 . . ." Thus, the district court's reason for not dividing the property more equally did not change from its first decision to its decision on remand.

[¶ 30] The only additional explanation the district court gave for not dividing the property more equally was that "[i]t would be inequitable to divide the assets equally because it would destroy his ability to earn a living and provide the necessary support to Defendant and the children." However, having made this finding, the district court then found: "As set forth in his testimony, it has been difficult for him to earn a living from this farm/ranch operation, and his living expenses have come from the equity in the property." This does not indicate a well managed or viable operation. The district court also found that based on his 1999–2003 tax returns, Bob Dvorak has an average self-employment income for child support purposes of $16,413.40 per year. This finding also does not indicate successful operation of the farming enterprise as an economic unit. *See Schoenwald v. Schoenwald*, 1999 ND 93, ¶¶ 22–23, 593 N.W.2d 350 (affirming equal division of property where there was a long-term marriage and the family farm was not an economically viable business and distinguishing cases where there was an economically viable business operation). The district court in this case was not presented with evidence of a farming operation that was a strong thriving source of income for a family with five children.

[¶ 31] I recognize that "we have recognized the importance of preserving the viability of a business operation like a family farm, and the potential for economic hardship if those type of entities are divided." *Gibbon v. Gibbon*, 1997 ND 210, ¶ 7, 569 N.W.2d 707. However, at an income of $16,413.40 per year resulting in child support of $510 per month for five children, this family is already in "economic hardship." It may be time for Bob Dvorak to find another way to earn a living and support his family.

[¶ 32] The district court also found that the total farm assets as of March 16, 2004, amounted to $1,252,026 and that the total farm liabilities amounted to $383,622 for a net worth of $868,404. This is a substantial net marital estate. The parties own 3,400 acres of land with equity of $533,378 ($917,100–$383,622), approximately of which half was purchased during the marriage. That leaves debt free all machinery, vehicles, equipment, crops, livestock and other farm assets which the court found valued at $334,926.00 as of March 16, 2004. With this amount of equity, it is difficult to understand the district court's logic in concluding it would be inequitable to divide the assets more equally. Our Court has said, "[t]he goal of preserving a business, however, does not call for a windfall for one spouse." *Linrud*, 552 N.W.2d at 346. The district court can structure the property division to allow for relative equality by distribution of farm assets to one spouse with an offsetting monetary award to the other spouse or an award to each spouse of assets, such as real estate. Liquidation is another option, although usually one of last resort.

[¶ 33] Preservation of a farming operation that is not generating enough income for Bob Dvorak to support himself let alone his five children is not a reason to refuse to divide more equally the property of the marriage. Bob Dvorak has an obligation to support his family and may need to get a job just like his former wife, Kathleen Dvorak will need to get a job.

[¶ 34] We have recognized that long-term marriages support an equal distribution of property. *Schoenwald*, 1999 ND 93, ¶ 23, 593 N.W.2d 350; *Horner v. Horner*, 2004 ND 165, ¶ 12, 686 N.W.2d 131. The parties were married September 8, 1990, and divorced June 10, 2004, resulting in close to a fourteen-year marriage. In addition, they lived together for two and one-half years. We have held it is appropriate for a court to consider the time parties live together when dividing property if they then marry. *See Horner*, at ¶ 13. These parties had a sixteen and one-half year relationship. They had five children who, at the time of the divorce, ranged in age from fourteen to nine years old. Kathleen Dvorak was awarded custody of the five children. The district court ordered Kathleen Dvorak to return with the children to North Dakota. She has no job and thus no income. The district court found she quit working when the parties' first child was born and from 1991 to 2003, and she worked outside the home only for ten months in 1999. In the one year preceding the divorce, she earned $1,500 as a massage therapist. She will receive spousal support of $1,000 per month for four years and $510 per month child support for the five children. This provides her an income of $18,120.00 per year until she can find a job. She received no income-producing property in the distribution of the marital property. She received a cash award of $213,000, which Bob Dvorak can pay over two years with interest at our judgment rate; the personal property in her possession, which is listed on the Rule 8.3, N.D.R.Ct., Property and Debt Listing at a value of $1,915; and, one-half of the minerals under Bob Dvorak's real estate. Kathleen Dvorak was also given the debt

in her possession. Kathleen Dvorak will incur expenses relocating to North Dakota. She and the five children have no home. Kathleen Dvorak will undoubtedly need to use her cash property division to support herself and the parties' five children. *See Marschner v. Marschner,* 2001 ND 4, ¶ 16, 621 N.W.2d 339 (holding a disadvantaged spouse is not required to deplete her property division in order to live).

[¶ 35] The district court is required under the *Ruff–Fischer* guidelines to consider the circumstances of the parties financially, including whether they receive any income-producing property. *Bladow v. Bladow,* 2003 ND 123, ¶ 7, 665 N.W.2d 724. The district court very superficially touches on these factors in its findings, reiterating the evidence presented by the parties on the circumstances and necessities of each and the property. The district court never recognizes that this was a long-term marriage. It also never recognizes the dire financial situation in which it has left Kathleen Dvorak and the parties' five children.

[¶ 36] Finally, I am at a loss why the "farm assets" aside from the real estate are not part of the division of the marital estate. The award of property to Kathleen Dvorak is based on the district court's calculation of the increase in the "farm net worth" from 1988 to 2004 of $223,757. I am of the opinion that the livestock, crops, hay and machinery were marital assets that should not have been considered by the district court in calculating what property Bob Dvorak brought into the marriage. A review of the machinery and equipment listed on the Rule 8.3, N.D.R.Ct., Property and Debt Listing indicates a significant amount was purchased after 1988. Also, the property listing indicates the parties owned $99,000 worth of breeding cows, 24 bulls worth $19,200, and 28 bred heifers worth $12,600. The parties also owned hay, straw oats, feed barley, and hard Red Spring Wheat valued at $60,350 at the time of the divorce. Although, it appears that Bob Dvorak brought into the marriage livestock, crops, machinery and equipment, these are the types of assets that are sold and replaced. The income from the sale of livestock and crops is used to provide the family income and to grow the farm operation. These are the types of assets that are difficult to trace and become co-mingled in the parties' accounts and after acquired property. I am unable to find a list of the machinery and equipment in the record that Bob Dvorak brought into the relationship in 1988. If such were in evidence then it could be compared to the equipment listed on the Rule 8.3, N.D.R.Ct., listing and it could be determined whether any of that equipment or machinery is still in the parties' possession. Bob Dvorak has not carried his burden of proof in that regard.

[¶ 37] After a review of this record and our case law, I am of the opinion the district court misapplied the *Ruff–Fischer* guidelines in determining the division of the parties' property, and I am left with a firm and definite conviction a mistake has been made. I would reverse and remand for the district court to equally divide the marital estate between the parties.

[¶ 38] Mary Muehlen Maring