2001 ND 157

**Stephanie R. DICKSON, Plaintiff and Appellant,**

v.

**Thomas A. DICKSON, Defendant and Appellee.**

**No. 20010011.**

Supreme Court of North Dakota.

Sept. 5, 2001.

Isabella Robertson of Robertson Law Office, P.C., Bismarck, for plaintiff and appellant.

Thomas M. Tuntland, Mandan, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Stephanie R. Dickson appealed from a trial court order denying her request to move to Saratoga, California with the parties' daughter. We reverse and remand the trial court's denial of Stephanie's request to move.

I

[¶ 2] Stephanie and Thomas Dickson divorced in October 1993. Stephanie was awarded custody of the parties' daughter. Thomas was awarded and exercised visitation.

[¶ 3] The parties both reside in the Bismarck Mandan area. Thomas remarried in December 1995, and he and his wife have one child together. Thomas's wife has two children from a prior marriage. Stephanie has not remarried. Stephanie works part time at a department store and substitute teaches during the school year.

[¶ 4] In June 2000, Stephanie was offered a teaching position in Saratoga, California with a $34,000 annual salary. In July 2000, Stephanie moved the trial court for permission to relocate to California with the parties' child. Thomas opposed Stephanie's motion, asserting the move would not improve Stephanie and the child's quality of life, would not foster and preserve the child's relationship with Thomas and his family, and would result in visitation problems.

[¶ 5] After a hearing, the trial court denied Stephanie's motion, finding she failed to meet her burden of proving the move was in the child's best interests. Stephanie appealed.

II

[¶ 6] Stephanie asserts the trial court erred in determining the move was not in the child's best interests.

[¶ 7] A custodial parent must obtain judicial permission to move a child to another state if the noncustodial parent does not consent to the move. N.D.C.C. § 14–09–07. The purpose of N.D.C.C. § 14–09–07 is to protect the noncustodial parent's visitation rights when the custodial parent wants to move out of state. *Hentz v. Hentz*, 2001 ND 69, ¶ 5, 624 N.W.2d 694. The primary consideration in determining whether a custodial parent may move a child out of state is the best interests of the child. *Id.* at ¶ 5. The custodial parent has the burden of proving, by a preponderance of the evidence, the move from the state is in the best interests of the child. *Id.* at ¶ 5. When determining whether the move is in the best interests of the child, the trial court must consider the following factors:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Id.* at ¶ 7; *see Hawkinson v. Hawkinson*, 1999 ND 58, ¶¶ 6 and 9, 591 N.W.2d 144 (citing *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903, and clarifying its fourth factor).

[¶ 8] A trial court's decision as to whether a proposed move to another state is in the best interests of the child is a finding of fact that will not be overturned on appeal unless it is clearly erroneous. *Hentz*, 2001 ND 69, ¶ 6, 624 N.W.2d 694. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 6.

[¶ 9] The trial court applied the relocation factors in resolving Stephanie's motion to move out of state with the parties' child. The court determined factors two and three were not dispositive because neither parent lacked integrity or valid purpose in that parent's motive regarding the move. As to the second factor, the court found Stephanie's desire to move was not to defeat or deter Thomas's visitation with the child, but to be close to Stephanie's sister and other family members. As to the third factor, the court found Thomas's reason for opposing the move was his concern that visitation might not happen or might be more difficult to arrange once the parties' daughter was living in California.

The trial court's findings under these factors is supported by the evidence.

[¶ 10] The trial court found factors one and four to be dispositive. Under the first factor, the court concluded Stephanie failed to show the move would improve the economic and noneconomic quality of life for her and the child. Under the fourth factor, the court concluded the proposed move would have a negative impact on Thomas's ability to maintain and preserve a close relationship with the child.

### A

[¶ 11] Stephanie argues the trial court's finding under the first factor was clearly erroneous because the court did not properly weigh the prospective advantages of the move.

[¶ 12] Under the first relocation factor, the trial court must weigh the advantages of the requested move while recognizing the importance of maintaining continuity and stability in the custodial family. *Tibor v. Tibor*, 1999 ND 150, ¶ 11, 598 N.W.2d 480. The court must give due weight to the possibility the move will enhance both the economic and noneconomic aspects of the custodial family's life. *Id.* at ¶ 11. Whether a custodial parent has secured employment at the proposed site of relocation should be considered under the first factor. *Aus v. Carter*, 1999 ND 246, ¶ 21, 603 N.W.2d 885.

### 1

[¶ 13] Regarding the prospective economic advantages of the move under the first factor, the trial court found:

[Stephanie] also has testified and submitted letters from both the Bismarck Public Schools and the Mandan Public School District, wherein they state they have currently filled their full-time teaching positions.... However, upon

cross-examination of [Stephanie], she testified she had not applied for teaching positions in any other school district in the state of North Dakota. She did state she was offered a position in Fort Yates, where she did not apply, but the administrator offered her a position anyway. [Stephanie] testified she turned it down, due to the distance she would have to travel on a daily basis.

The court observed:

But, why did she not place applications in other surrounding school districts which are closer? And if [Stephanie] is determined to get a full-time position, why did she not apply to school districts in other urban areas of North Dakota?

[¶ 14] The court found that "California would be a likely choice for [Stephanie] to find employment outside of North Dakota" because she has family in California and Oregon. The court also found Thomas did not contradict that a $34,000 annual salary is higher than a salary for an elementary school teacher in North Dakota. The court continued with the following queries:

But, what about the salaries of elementary teachers in North Dakota? The only evidence of salary comparison is the job she was offered at Fort Yates for a salary of $19,000. The same job which she testified she did not apply for and did not think very highly of the position. So, what about the salaries of teaching positions in Dickinson, Fargo, Jamestown, Grand Forks, Minot, Devils Lake, Williston, etc.? How can the Court compare the economics of the position in California when [Stephanie] did not submit any evidence of salary comparisons to North Dakota? And what about the cost-of-living adjustment with a move from North Dakota to California? The Court is quite aware that the cost of living is quite more expensive in states such as California as compared to North Dakota. Does a salary of $34,000, adjusted for the increase in daily and monthly expenses living in California, bring home more net dollars than an elementary teaching position in North Dakota? Without this type of evidence on the record, how can a court determine that the economics of a move to California would be beneficial to [Stephanie] and [the parties'] child?

[¶ 15] The trial court found that Stephanie failed to present sufficient evidence to show she was unable to secure a teaching position in North Dakota outside the Bismarck Mandan area, and also found Stephanie did not submit evidence to prove her net monthly income in California, after adjusting for cost-of-living changes, would be more beneficial than what she might earn in North Dakota. Based on these findings, the trial court concluded Stephanie had not met her burden of proving the economic advantage of the move would be more beneficial to her and the child.

[¶ 16] This Court considered and rejected a similar analysis under factor one in *Keller v. Keller,* 1998 ND 179, 584 N.W.2d 509, and *Goff v. Goff,* 1999 ND 95, 593 N.W.2d 768.

[¶ 17] In *Keller,* 1998 ND 179, ¶ 14, 584 N.W.2d 509, the custodial parent introduced evidence showing economic and non-economic benefits of a proposed move from Grand Forks, North Dakota to Fort Wayne, Indiana. She accepted a position related to her doctoral psychology degree in Fort Wayne. *Id.* at ¶ 14. The position provided benefits and the opportunity for career development. *Id.* at ¶ 14. Despite evidence of the difficulty of securing similar employment in Grand Forks, the trial court found the custodial parent failed to prove the economic advantage of the move because she did not apply for employment in Grand Forks or the surrounding area. *Id.* at ¶¶ 14–15. After recognizing the

noncustodial parent offered little evidence to directly contradict the evidence offered by the custodial parent, we concluded the trial court's finding was clearly erroneous. *Id.* at ¶ 15.

[¶ 18] The custodial parent in *Goff*, 1999 ND 95, ¶ 12, 593 N.W.2d 768, was unemployed at the time of the relocation motion. She presented documentation to the trial court showing she had distributed more than fifty resumes to businesses in the Fargo Moorhead area with the intent of securing either a full-time position as a dental hygienist or a position utilizing her business degree. *Id.* at ¶ 12. She also sent resumes to a limited number of businesses in Minnesota and Michigan. *Id.* at ¶ 12. She was unsuccessful in her attempts to secure employment in the Fargo Moorhead area and ultimately accepted a position as a part-time dental hygienist in Holland, Michigan. *Id.* at ¶ 12. The trial court found she had not adequately explored employment opportunities outside the Fargo Moorhead area, but within a reasonable driving distance. *Id.* at ¶ 12. We stated:

> After receiving evidence of an extensive, but unfruitful, job search in the Fargo Moorhead area, we do not believe it reasonable for a trial court to suggest a custodial parent must seek employment that would involve a daily commute outside of the community where the parent and children reside. The failure to seek a job that requires such commuting is not appropriate evidence of lack of a good faith effort to find employment.

*Id.* at ¶ 12. We further opined, "The trial court's findings, if sustained, would impose unreasonable requirements upon custodial parents seeking to improve their financial circumstances through new employment." *Id.* at ¶ 13.

[¶ 19] The trial court in this case erred in requiring Stephanie to look for employment "in other urban areas of North Dakota." Stephanie is not required to seek employment that would involve a daily commute outside of the general Bismarck Mandan area. *See Goff*, 1999 ND 95, ¶ 12, 593 N.W.2d 768. Nor have we required a custodial parent to provide a trial court with a comparative cost-of-living analysis to prove the economic advantage of the proposed move. Although relevant, cost-of-living evidence is not required.

[¶ 20] Stephanie provided the trial court with evidence showing there were no teaching positions available with either the Bismarck Public Schools or the Mandan Public School District. Stephanie provided evidence of the $34,000 annual salary offered her by the Saratoga Union School District. Thomas did not contradict Stephanie's contention that the $34,000 salary she was offered for the teaching position in California is a higher salary than elementary school teachers are paid in North Dakota. *See Keller*, 1998 ND 179, ¶¶ 14–15, 584 N.W.2d 509 (recognizing the noncustodial parent offered little evidence to directly contradict the evidence offered by the custodial parent and concluding the trial court's finding the custodial parent failed to prove the economic advantage of the move because she did not apply for employment in Grand Forks or the surrounding area was clearly erroneous).

[¶ 21] The trial court misapplied the law in reaching its conclusion that Stephanie had failed to prove the proposed move would be economically advantageous for Stephanie and the child by imposing unreasonable requirements on her to seek employment outside the Bismarck Mandan area and to prove economic advantage with a comparative cost-of-living analysis.

2

[¶ 22] Regarding the prospective noneconomic advantages of the move under the first factor, the trial court con-

sidered the number of relatives in California as compared to the number of relatives in North Dakota. The court found, "[The child] and [Stephanie] definitely have more family living in North Dakota, especially the Bismarck area, than in California." The court acknowledged the convenience in transportation for Stephanie if she works at the school the child attends. The court continued, however, stating:

> But, the Court does not see where this situation would be of any further benefit. [Stephanie] and [the child] would not be able to spend any quality time together during the school day, since [Stephanie] would be in her classroom teaching, and [the child] would be in her classroom learning. Also, [the child] will not be in elementary school for too many years, and then she will be attending junior high school. The Court is assuming, since no evidence was presented to the contrary, that the junior high school in Saratoga would be a completely different school and location from the elementary school. Therefore, any convenience for [Stephanie] relative to transportation would end at that point.

The court concluded the noneconomic aspects of the child's life would not be enhanced by the proposed move because most of her immediate family is in North Dakota and her daily contact with her mother would not increase merely because they would be in the same elementary school.

[¶ 23] The trial court's consideration of the convenience of having Stephanie working at the school the child attends is much too narrow. The potential advantages of the arrangement may be numerous and significant, including a single trip at the beginning and end of each work day, and the trial court failed to give sufficient consideration to the advantages.

[¶ 24] In considering the location of family members on the noneconomic aspects of the proposed move, simply adding the number of relatives in each location and comparing the two numbers is an improper method for determining whether a move will enhance the noneconomic aspects of the lives of the custodial parent and the parties' child. The trial court should have considered the comparative strengths of the supportive family relationships, and should also have considered other noneconomic advantages which are likely to improve the child's and custodial parent's general quality of life such as educational opportunities, health, and happiness. *See Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903.

[¶ 25] In making its findings as to the first factor, the trial court misapplied the law to the facts in this case.

## B

[¶ 26] Stephanie argues the trial court's finding under the fourth factor was clearly erroneous because the court was not presented with evidence showing Stephanie would not comply with Thomas's visitation rights.

[¶ 27] Under the fourth factor, the court must consider the negative impact of the move on the noncustodial parent's relationship with the child and the ability to restructure visitation to foster and preserve the relationship. *Tibor v. Tibor*, 1999 ND 150, ¶ 23, 598 N.W.2d 480.

> In applying factor four, the court stated:
> [T]he parties have both been residing in Bismarck since the time of the divorce, except for the brief period of time in 1995 when [Stephanie] moved to New York. Therefore, visitations have been convenient for [Thomas], and he has been able to keep close and frequent contact with the child. With the pro-

posed move to California, naturally the closeness and frequency of visitations would drastically change.

Now, [Stephanie] has testified she is willing to provide for a more extended summer visitation for [Thomas] with alternating holidays. She is willing to pay for the transportation except for the Easter holiday. However, as [Thomas] testified, he has recently been denied at least one visitation in the past, and he had no telephone contact with [the child] when she was in California over Father's Day. [Stephanie] claims [the child] did not want to call her father, but the Court agrees with [Thomas] that she should have taken more control of the situation and had [the child] make the call. So, the parties have had some difficulty with visitations even when they have been living in the same community, let alone being thousands of miles apart from one another. Also, there is already evidence that phone contact between [Thomas] and his child will be a problem, if [the child] is living out of state from her father. Consequently, it appears in all likelihood [Thomas] will definitely have more difficulty in arranging visitations and making contact with his child and dealing with [Stephanie] when she is living in California rather than North Dakota.

The court concluded the proposed move would have a negative impact on Thomas's ability to maintain and preserve close relationship with the child.

[¶ 28] The record supports the trial court's finding that the potential negative impact on the relationship between Thomas and the child weighs against the move. In addition to the instances referred to by the trial court, there is other evidence suggesting visitation may be difficult if Stephanie and the child move to California. Thomas has accused Stephanie of refusing to allow him reasonable visitation. Stephanie has accused Thomas of failing to follow visitation arrangements.

[¶ 29] In reviewing a trial court's findings of fact, we give due regard to the court's opportunity to assess the credibility and observe the demeanor of the witnesses. *Lohstreter v. Lohstreter*, 2001 ND 45, ¶ 21, 623 N.W.2d 350. We do not re-weigh evidence or reassess credibility when there is evidence to support a trial court's findings. *Id.* at ¶ 21. A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.* at ¶ 21.

[¶ 30] Because there is evidence supporting the trial court's finding, the court did not clearly err in determining the fourth factor weighs against allowing the move.

### III

[¶ 31] Because the trial court erroneously applied factor one, prospective advantages of the move, the trial court's finding that the move would not be in the child's best interest cannot be affirmed. We reverse and remand for an appropriate consideration of all the relocation factors. The trial court may, in its discretion, determine whether any further evidence or argument is required.

[¶ 32] GERALD W. VANDE WALLE, C.J., KAPSNER, J., concur.

MARING, Justice, concurring in part and dissenting in part.

[¶ 33] I concur in that part of the majority opinion concluding the trial court misapplied the law with regard to the first factor. I am of the opinion, however, the trial court also misinterpreted and misapplied the law with regard to the fourth factor, and therefore, I would remand for

the trial court to correctly apply the fourth factor as well as the first factor.

[¶ 34] Under the fourth factor, "the trial court must determine whether a visitation schedule can be devised which can reasonably provide the foundation for maintaining and developing a parent-child relationship between the child and the noncustodial parent." *Stout v. Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903. Although a proposed move may adversely affect the noncustodial parent's relationship with his child, when the move is sought in good faith and to gain legitimate advantages for the custodial parent and the child, the move must not be denied because visitation cannot continue in its existing pattern. *Id.; Hentz v. Hentz*, 2001 ND 69, ¶ 7, 624 N.W.2d 694 (quoting *Stout v. Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903). To hold otherwise would result in "an unintentional automatic reason to deny relocation." *Keller v. Keller*, 1998 ND 179, ¶ 16, 584 N.W.2d 509.

[¶ 35] We have continually recognized that even though distance may make it impossible to maintain the same visitation schedule presently enjoyed by the noncustodial parent and the child, allowing liberal visitation during summer months and vacations can foster a meaningful relationship between the noncustodial parent and the child. *Keller*, 1998 ND 179, ¶ 16, 584 N.W.2d 509; *see also Burich v. Burich*, 314 N.W.2d 82, 88 (N.D.1981). A visitation schedule which provides less frequent, but extended visitation periods can preserve a noncustodial parent's right to foster and develop a relationship with the child. *Matter of B.E.M.*, 1997 ND 134, ¶ 20, 566 N.W.2d 414. Extended periods of visitation provide the noncustodial parent and the child longer periods together, whereby they can nurture and develop their relationship. *State ex rel. Melling v. Ness*, 1999 ND 73, ¶ 23, 592 N.W.2d 565.

[¶ 36] It is not an appropriate consideration that it is more convenient for the noncustodial parent to maintain the status quo. When both parents have lived in the same city, any proposed relocation will result in a less convenient visitation schedule. Today modern transportation and instant communication through telephone and computers are available to foster the noncustodial parent-child relationship. *Tibor v. Tibor*, 1999 ND 150, ¶ 26, 598 N.W.2d 480. A trial court's analysis of factor four which indicates its belief that any restructuring must provide the same visitation schedule and convenience after a relocation as was experienced before the relocation is an incorrect interpretation of the law. *Goff v. Goff*, 1999 ND 95, ¶ 18, 593 N.W.2d 768; *Hentz*, 2001 ND 69, ¶ 9, 624 N.W.2d 694. The frequency of visitation and closeness between the noncustodial parent and the child are to be considered in the context of re-fashioning the visitation schedule. If there has been frequent contact, then liberal extended visitation in summers, on school breaks, and on holidays should be scheduled.

[¶ 37] It appears the trial court in the present case did not consider frequency of visitation and closeness in the proper context, however. In its analysis applying factor four, the trial court stated:

> As stated beforehand, the parties have both been residing in Bismarck since the time of the divorce, except for the brief period of time in 1995 when the plaintiff moved to New York. Therefore *visitations have been convenient* for the defendant, *and he has been able to keep close and frequent contact* with the child. *With the proposed move* to California, naturally *the closeness and frequency of visitations would drastically change.* (Emphasis added.)

[¶ 38] The trial court's misinterpretation and misapplication of factor four is

evident in its statement of its conclusion of factor four: "Lastly, the proposed move would have a negative impact on the defendant's ability to maintain and preserve a *close relationship* with the minor child." (Emphasis added.)

[¶ 39] This is not the standard. The noncustodial parent's inability to maintain the same frequent contact and degree of closeness with the child is not a sufficient basis to deny a relocation when the "move is sought in good faith and to gain legitimate advantages for the custodial parent and the child." *Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903; *Hentz*, 2001 ND 69, ¶ 7, 624 N.W.2d 694 (quoting *Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903). Naturally, Stephanie's relocation to California will result in a visitation schedule that is less convenient and less frequent for Thomas. This is true, however, for any proposed relocation, and the trial court cannot consider convenience, frequency of visitation or closeness in a manner that circumvents the proper interpretation and application of factor four.

[¶ 40] In *Hentz*, 2001 ND 69, ¶¶ 8–9, 624 N.W.2d 694, we noted our concern about a sentence in the trial court's decision that states: "If the move were allowed, there would be no regular contact between father and son." We emphasized "the fact a noncustodial parent will not be able maintain the same visitation schedule is not, alone, a basis for denying permission to the custodial parent to leave the state with the child." *Id.* at ¶ 9. We affirmed the trial court's denial of the move because we concluded the trial court's decision was not based on frequency of visitation but rather the conclusion the custodial parent would not comply with the visitation order thus preventing "regular contact."

[¶ 41] Here, however, the trial court concludes a "close relationship" cannot be maintained and preserved by restructured visitation. There is a big difference between maintaining a "close relationship," which connotes frequency and convenience, and maintaining "regular contact," which connotes compliance with a restructured visitation schedule. I recognize the trial court concluded "in all likelihood" the noncustodial parent would have more difficulty in arranging visitations because of past visitation difficulties with the custodial parent. Frustration of visitation is an appropriate consideration in determining whether each parent will comply with restructured visitation under factor four. *See Tishmack v. Tishmack*, 2000 ND 103, ¶ 19, 611 N.W.2d 204; *Hentz*, 2001 ND 69, ¶ 9, 624 N.W.2d 694. I am not convinced, however, the trial court considered the facts of closeness, frequency of visitation, and convenience of contact in the proper context.

[¶ 42] In this case, if the trial court had properly applied factor four to the evidence, I do not know whether it would have found factor four in favor of Thomas based solely on the two incidents of frustration of visitation. The parties have been divorced for seven years, and the trial court found only two incidents of frustration of visitation. During the first incident, Thomas was scheduled to have visitation with the child on her birthday, but since he did not plan a birthday party for the child, Stephanie planned one for her at a local motel. After Thomas became aware of the party, he consented to it and was able to exercise visitation that evening. The second incident involved a scheduled telephone contact. While Stephanie and the child were in California over Father's Day, the child did not call Thomas. Stephanie, however, testified she asked the child to call Thomas on two occasions, and the child declined to do so both times. Also, Stephanie testified

Thomas knew the number where she and the child could be reached in California, and he, too, failed to call.

[¶ 43] Furthermore, the trial court's findings under factor four are at odds with its findings under factor two. Under factor two, the trial court must determine whether a motion to relocate is motivated by a desire to interfere with visitation. *Stout*, 1997 ND 61, ¶ 35, 560 N.W.2d 903. In doing so, the court must determine the degree to which the custodial parent will comply with visitation arrangements after the move. *Id.* The trial court considering the same evidence it did under factor four concluded under factor two that Stephanie's desire to move was not to defeat or deter Thomas's visitation with the child. Under factor four, however, the trial court concluded Stephanie was not likely to comply with a restructured visitation order. These findings are inconsistent, and if the court, with regard to factor two, was of the opinion that the two incidents of interference with visitation did not indicate that Stephanie would not comply with visitation after the move, then it should have found she would comply with a restructured visitation under factor four. It did not, however, and I believe the trial court must reconsider its findings under factor four.

[¶ 44] Because I believe the trial court misapplied factor four, I would remand for the trial court to determine whether a restructured visitation is possible and, if so, whether the two incidents regarding Stephanie's interference with visitation over a seven-year period are sufficient grounds to find this factor in Thomas' favor.

[¶ 45] Mary Muehlen Maring

SANDSTROM, Justice, concurring and dissenting.

[¶ 46] I agree with the majority's conclusion as to "the fourth factor," but dis-agree with its conclusion as to "the first factor."

[¶ 47] The majority correctly states, at ¶ 7, "The custodial parent has the burden of proving, by a preponderance of the evidence, the move from the state is in the best interests of the child." *Hentz v. Hentz*, 2001 ND 69, ¶ 5, 624 N.W.2d 694.

[¶ 48] As to the economic advantage of the move, the trial court found that the custodial parent had failed to meet her burden for a number of reasons, any one of which would be sufficient to sustain the finding. Stephanie testified she did not apply to any of the smaller surrounding school districts. The trial court's requirement that Stephanie look for employment with the surrounding school districts was reasonable and was not clearly erroneous. Economic advantage of the move was not established where the custodial parent had not reasonably pursued employment in surrounding school districts.

[¶ 49] As to the noneconomic advantage of the move, the majority reweighs the evidence, and further states, at ¶ 24: "In considering the location of family members on the noneconomic aspects of the proposed move, simply adding the number of relatives in each location and comparing the two numbers is an improper method for determining whether a move will enhance the noneconomic aspects of the lives of the custodial parent and the parties' child." While such a method may be improper, *but see Stout v. Stout*, 1997 ND 61, ¶ 39, 560 N.W.2d 903, the record does not support an assertion that the trial court used it.

[¶ 50] I would affirm the decision of the trial court.

[¶ 51] Dale V. Sandstrom