2006 ND 123

Brandon J. PORTER, Plaintiff
and Appellant

v.

Olga V. PORTER, Defendant
and Appellee.

No. 20050358.

Supreme Court of North Dakota.

June 1, 2006.

Jonathan Edward Alm, Louser and Zent, PC, Minot, N.D., for plaintiff and appellant.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, N.D., for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Brandon Porter appealed from a district court order denying his motion to move with his child from North Dakota to Alaska. We conclude the district court erred in applying the *Stout–Hawkinson* factors, and we therefore reverse and remand.

I

[¶ 2] Brandon Porter is a member of the United States Air Force. Brandon and Olga Porter were married in 1996. The parties' minor child was born in 1999, while Brandon Porter was stationed in Alaska at Eielson Air Force Base. In 2002, Brandon Porter was transferred to Minot

Air Force Base in North Dakota. Brandon and Olga Porter were divorced in 2003, and judgment was entered, consistent with the parties' stipulation, awarding the parties joint legal custody of their child and awarding Brandon Porter primary physical custody.

[¶ 3] In March 2005, Brandon Porter received notice he was being transferred back to Eielson Air Force Base in Alaska. In April 2005, Brandon Porter moved for permission from the court to remove the parties' child from North Dakota. After a hearing, the district court denied Brandon Porter's motion, concluding he orchestrated the transfer from North Dakota to Alaska in an effort to distance himself from Olga Porter and to limit her involvement in raising the child. The court also concluded it doubted whether there was a realistic way to provide visitation that would preserve and foster Olga Porter's relationship with the child, and it was questionable whether Brandon Porter would comply with any court-ordered visitation.

## II

[¶ 4] Section 14-09-07, N.D.C.C., provides, "[a] parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent." The court's primary consideration in relocation cases is whether it is in the child's best interests to move to another state. *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 7, 681 N.W.2d 762. The custodial parent has the burden to prove, by a preponderance of the evidence, that the move is in the child's best interests. *Id.*

[¶ 5] The district court's decision on relocation is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Stout v. Stout*, 1997

ND 61, ¶ 7, 560 N.W.2d 903. A finding of fact is clearly erroneous if "it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* This Court will not reweigh the evidence or reassess credibility when there is evidence to support the district court's findings, and we will not reverse the decision merely because we might have reached a different conclusion. *See Hentz v. Hentz*, 2001 ND 69, ¶ 6, 624 N.W.2d 694.

[¶ 6] To determine whether a contemplated move is in the child's best interests, a district court must consider the four factors that were enumerated in *Stout* and modified in *Hawkinson:*

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, and

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Stout*, 1997 ND 61, ¶ 33, 560 N.W.2d 903; *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144 (modifying the fourth factor). One factor is not dominant, and what may not be important in one case

may be of more significance in another case. *Oppegard–Gessler*, 2004 ND 141, ¶ 8, 681 N.W.2d 762. The district court must analyze all four factors when determining whether the move is in the child's best interest; failure to address all four factors is reversible error. *Dvorak v. Dvorak*, 2005 ND 66, ¶ 19, 693 N.W.2d 646.

### A

[¶ 7] Brandon Porter argues the district court clearly erred because it failed to address the first *Stout–Hawkinson* factor. We agree.

■ [¶ 8] The first factor requires the court to consider the prospective advantages of the move, and in doing so, the court is not limited to only considering the enhanced economic opportunities for the custodial parent, but must also consider the other less tangible benefits of the relocation. *Stout*, 1997 ND 61, ¶ 33, 560 N.W.2d 903. Essential to the analysis is the "importance of maintaining continuity and stability in the custodial family." *Goff v. Goff*, 1999 ND 95, ¶ 14, 593 N.W.2d 768. The court should consider any evidence presented regarding the relationship between the custodial parent and the child, and may also presume the custodial parent plays a significant role in the child's life due to the nature of their relationship. This Court has stated, "[w]e will reverse if the trial court's analysis fails to give sufficient credence to the need for keeping the custodial family intact." *Id.*

■ [¶ 9] Olga Porter claims Brandon Porter is not the child's custodial parent and that they are in fact joint custodians. The parties stipulated they would receive joint legal custody with Brandon Porter receiving primary physical custody of the child. We give a great deal of deference to custody provisions in a stipulated decree because the parties agreed to those terms and the terms were adopted by the court. *Oppegard–Gessler*, 2004 ND 141, ¶ 12, 681 N.W.2d 762. We encourage divorced parents to cooperate and allow flexible visitation to provide a healthy environment for the child, and as we have previously stated, we will not punish a custodial parent "for allowing, either voluntarily or out of necessity, the child [] to exercise flexible, liberal visitation with [the noncustodial parent]." *Id.* at ¶ 13. However, notwithstanding Olga Porter's additional visitation, for purposes of N.D.C.C. § 14-09-07 the parties are not joint custodians. Brandon Porter is the child's primary custodian, and therefore the district court must consider the benefits of maintaining the custodial relationship that exists between Brandon Porter and the child.

■ [¶ 10] Although Olga Porter argues Brandon Porter failed to present any evidence on the first *Stout–Hawkinson* factor which would allow the court to make findings, her argument is unpersuasive. The evidence presented to the district court included the economic benefits, the recreational benefits, and the benefits of maintaining the custodial parent/child relationship. Brandon Porter testified to his daily involvement in the child's life, including helping her with school work and his involvement in her daily routine. He testified to the recreational activities he participates in with the child, including hockey, soccer, snowmobiling, four wheeling, and other outdoor activities. Brandon Porter also testified to the economic benefit his family would receive, including an increased cost of living allowance of $500 per month, a housing allowance of $600 per month, and his wife would receive a pay raise of $5,000 to $6,000 per year. He also testified if he refused the transfer he would effectively end his military career because he would likely be denied re-enlistment. Brandon Porter is not required to provide the district court "with a com-

parative cost-of-living analysis to prove the economic advantage of the proposed move." *See Dickson v. Dickson*, 2001 ND 157, ¶ 19, 634 N.W.2d 76. Although Olga Porter claims the cost of living is greater in Alaska and Brandon Porter will not see an economic benefit from the move, she failed to present any evidence supporting this claim. The district court may have considered the first factor and this evidence in reaching its conclusion, but the court's analysis fails to address the factor or the relevant evidence.

[¶ 11] We conclude the district court misapplied the law and clearly erred in failing to address the first *Stout–Hawkinson* factor. On remand, the court must consider the advantages of the move, including the stability of the custodial relationship and the evidence presented regarding the economic and non-economic advantages. In doing so, the court should consider that Brandon Porter is unable to reconsider the decision to relocate due to his position in the military and he must relocate to Alaska whether or not the court gives him permission to relocate with the child.

### B

[¶ 12] The district court made specific findings on the second *Stout–Hawkinson* factor, concluding Brandon Porter's motive for relocating to Alaska was improper. It is apparent from the court's decision that this was the primary reason the court denied Brandon Porter's motion to relocate.

[¶ 13] The district court found this was not the usual military transfer case, instead the evidence presented led the court to conclude Brandon Porter orchestrated his transfer from North Dakota to Alaska. The evidence the court found supporting its conclusion included Brandon Porter's "Dream Sheet," filled out six months after the parties' divorce, listing Eielson Air Force Base as an installation he would accept a transfer to. The court found Brandon Porter's actions in filling out the "Dream Sheet" were suspect and questioned whether he was attempting to put distance between himself and Olga Porter without regard for the child's best interests. The court found Brandon Porter's demeanor and uneasiness when questioned about the "Dream Sheet" and why he requested Olga Porter not attend the child's recreational activities supported its decision. Based on this evidence, the court concluded the move to Alaska was the result of Brandon Porter's desire to minimize the amount of contact he would have with Olga Porter regarding their child, and therefore was improper.

[¶ 14] There is sufficient evidence to support the district court's findings under the second *Stout–Hawkinson* factor. We do not reweigh that evidence, and we are not left with a definite and firm conviction the district court made a mistake on this factor. The court's findings on this factor are not clearly erroneous.

### C

[¶ 15] Under the third *Stout–Hawkinson* factor, the district court concluded Brandon Porter did not argue Olga Porter's motives for opposing the move were suspect in any way. The court found Brandon Porter conceded that Olga Porter's opposition was based on a desire to maintain a relationship with the child.

[¶ 16] Brandon Porter argues the district court's finding is incorrect. In Brandon Porter's district court reply brief he argued Olga Porter was opposing the move in an attempt to obtain custody of the child, to create a financial hardship for Brandon Porter, and to cause harm to his relationship with the child. Brandon Porter also presented evidence of an email

from Olga Porter that he claimed supports his position. The evidence does not support the district court's finding that Brandon Porter conceded the third factor was not at issue, and therefore, the district court's finding on the third factor is clearly erroneous. On remand, the district court must analyze this factor.

### D

[¶ 17] The fourth *Stout–Hawkinson* factor requires the court to consider "the negative impact of the move on the noncustodial parent's relationship with the child [] and the ability to restructure visitation to foster and preserve the relationship." *Oppegard–Gessler*, 2004 ND 141, ¶ 15, 681 N.W.2d 762. "Distance alone is not a sufficient basis to deny relocation; it must be considered in the context of the ability to refashion a visitation schedule that can foster the noncustodial parent/child relationship." *Goff*, 1999 ND 95, ¶ 17, 593 N.W.2d 768. While it may be impossible to establish a visitation schedule with the same amount of visitation or with visitation as frequent, the court must consider that " '[a] visitation schedule which provides less frequent, but extended, visitation periods will preserve a noncustodial parent's ability to foster and develop a relationship with the child.' " *Olson v. Olson*, 2000 ND 120, ¶ 4, 611 N.W.2d 892 (quoting *Tibor v. Tibor*, 1999 ND 150, ¶ 24, 598 N.W.2d 480).

[¶ 18] Brandon Porter proposed a visitation schedule that included extended summer visitation, phone contact, and use of a webcam for weekly visits. However, the district court questioned whether there was any visitation schedule that would provide an adequate basis for preserving and fostering Olga Porter's relationship with her child. The court concluded the move would irreparably harm the relationship between Olga Porter and the child, because Brandon Porter is not the type of parent that would preserve and foster the relationship between Olga Porter and the child especially over a great distance.

[¶ 19] Furthermore, the court was concerned that Brandon Porter would not comply with any modified visitation agreement because Brandon Porter had requested Olga Porter not attend some of the child's recreational activities. During his testimony Brandon Porter explained that he asked Olga Porter not to attend some of the child's recreational activities because the child became confused when Olga Porter attended those activities. Brandon Porter also explained that these recreational activities were not during Olga Porter's visitation time and he never denied Olga Porter any scheduled visitation. The court found Brandon Porter's explanation was short on substance and was not persuasive.

[¶ 20] On this record, it is pure speculation for the district court to conclude Brandon Porter would not honor a court-ordered visitation schedule should he be allowed to move the child to Alaska. We conclude there is no evidence to support the court's finding about visitation and that its finding is clearly erroneous.

### III

[¶ 21] We reverse and remand for further proceedings consistent with this opinion.

[¶ 22] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DANIEL J. CROTHERS, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 23] Because the district court properly followed the law and because the majority wrongly seeks to substitute its

judgment for that of the district court on findings of fact, I dissent.

[¶ 24] Plainly and simply stated, the district court found that this is a move-away case involving bad motives on the part of the custodial parent.

[¶ 25] The record shows that the custodial parent's transfer to Alaska reflects his "dream sheet" filing with the Air Force, indicating Alaska as his "dream" location. He acknowledged that he did not have to make such a filing. The custodial parent's attorney acknowledged at oral argument that there is no evidence that absent his dream sheet, he would have been transferred to Alaska.

[¶ 26] As the district court found:

In the usual course of events, the Court would be inclined to give a person in Brandon's position permission to move his child out of state. However, the Court finds that this is not your "garden variety" case of a person in the military being transferred from one duty station to another. Based upon the evidence, the Court is led to the inescapable conclusion that Brandon—at least to some degree—orchestrated his transfer from North Dakota to Alaska.

. . . .

Brandon seemed very uneasy when talking about all of this at trial; and this uneasiness, coupled with Brandon's acknowledged request of Olga that she not attend certain of Isabelle's recreational activities/events, causes the Court to: 1. question the integrity of Brandon's motives for relocation; 2. seriously doubt whether, if relocation is allowed, there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering Olga's relationship with Isabelle; and, 3. question whether Brandon would comply with a modified visitation schedule devised by the Court.

In the final analysis, the Court is persuaded, by the greater weight of the evidence, that Brandon's move to Alaska is the result, at least in part, of his desire to minimize the amount of contact he will have with Olga in relation to visitation and other issues associated with Isabelle's upbringing. In the Court's view, this is an improper motive for relocation on Brandon's part, and demonstrates to the Court that he does not have Isabelle's best interests truly at heart when it comes to preserving and fostering the relationship between Isabelle and her mother Olga.

[¶ 27] A custodial parent seeking a court order permitting a change in a child's residence to another state under N.D.C.C. § 14–09–07 "must prove, by a preponderance of the evidence, that the move is in the best interests of the child." *Stout v. Stout*, 1997 ND 61, ¶ 9, 560 N.W.2d 903. The district court did not believe Brandon Porter had met that burden.

[¶ 28] The majority, at ¶ 10, discusses the supposed economic benefit his family would receive from the move, and the consequences of refusing the transfer, "which would effectively end his military career." Actually, what the majority characterizes as the "economic benefit" he will receive is, according to his own testimony, "a cost of living allowance." The additional $500 Brandon Porter would receive was specifically labeled a cost-of-living allowance. The $600 per month housing allowance was actually an increase of $600 per month from his existing housing allowance to assist with the higher cost of living in Alaska. By definition, these "benefits" would be allowances to help cover the higher cost of living, in this case, in Alaska. That he will receive a cost-of-living adjustment to help cover the costs of a more expensive

place to live establishes no economic benefit at all. The evidence reflects that the wife's "salary increase" is also related to the higher cost of living in Alaska, and that they are going to "spend more at the end of each month."

[¶ 29] The majority quotes *Dickson v. Dickson*, 2001 ND 157, ¶ 19, 634 N.W.2d 76, out of context, and wrongly seeks to shift the burden from the proponent of the move. What the Court said in *Dickson* is, "Nor have we required a custodial parent to provide a trial court with a comparative cost-of-living analysis to prove the economic advantage of the proposed move. Although relevant, cost-of-living evidence is not required." Further, in *Dickson*, the custodial parent was not claiming a cost-of-living adjustment as an economic advantage of the move. In this case, the custodial parent seeks to claim cost-of-living adjustments as an "economic advantage" of the move, but it in fact establishes no economic advantage.

[¶·30] The district court specifically cites *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 12, 681 N.W.2d 762, and discusses the noneconomic considerations of the first factor, including "that the Court must 'weigh the advantages of the move while recognizing the importance of maintaining continuity and stability in the custodial family....' Further, 'Both the economic and noneconomic advantages of the move must [be] given due weight.'"

[¶ 31] The majority also references that Brandon Porter may not have been allowed to reenlist if he had not accepted the transfer to Alaska. The district court found, however, that this problem was of his own making because of his improperly motived acts, resulting in his being transferred to Alaska. Two maxims of jurisprudence are that "[a] person cannot take advantage of that person's own wrong," and, "[n]o one should suffer by the act of another." N.D.C.C. § 31–11–05(8), (11); *see also Kraft v. Moore*, 517 N.W.2d 643, 645 (N.D.1994) ("This case calls for application of the maxim that a person may not take advantage of her own wrong."). Brandon Porter cannot take advantage of his own wrong.

[¶ 32] The district court properly did its job.

[¶ 33] I would affirm.

[¶ 34] Dale V. Sandstrom