2007 ND 66

**Kari Lynn GILBERT, Plaintiff
and Appellant**

v.

**Boe Jason GILBERT, Defendant
and Appellee.**

No. 20060306.

Supreme Court of North Dakota.

May 4, 2007.

 

Jessica J. Wolf, Lange & Donovan, PLLP, Hazen, ND, for plaintiff and appellant.

Rudolph A. Tollefson, Solem Law Office, Beulah, ND, for defendant and appellee.

MARING, Justice.

[¶1] Kari Merritt, formerly known as Kari Gilbert, appeals from a district court order denying her motion to move with her child to West Virginia. We conclude the district court's finding the move is not in the child's best interests is clearly erroneous, and we reverse and remand with instructions the court enter an order granting the motion to move and establishing an appropriate visitation schedule.

I

[¶2] Merritt and Boe Gilbert were married in 1998, and have one child together. Merritt also has physical custody of a second child from a previous relationship. In 2001, Merritt and Gilbert divorced. Merritt was awarded sole custody of the parties' child, and Gilbert was awarded visitation. The parties agreed Gilbert would have visitation every other weekend, every other holiday, and extended summer visitation starting with two weeks the first year and increasing one week each year until Gilbert had a total of eight weeks of summer visitation. The parties are flexible with the visitation schedule, and Gilbert often has more visitation than was ordered.

[¶3] Merritt married Michael Merritt in July 2006. Michael Merritt lives in Ripley, West Virginia, but his occupation requires extensive travel to various locations in the United States, and he is often only in West Virginia for approximately four months a year. Michael Merritt testified his employer provides transportation to the job sites from West Virginia, and he would be required to pay his own travel

expenses if he decided to live in another state.

[¶ 4] Merritt is pursuing a degree in addiction studies, and will fulfill her degree requirements after completing an internship. Merritt testified she would have to relocate within the state to pursue her career because there are no addiction counseling positions in Mercer County, where she currently resides. Merritt has secured an internship position in West Virginia, and was offered a permanent position upon completion of the internship. Merritt testified she will earn approximately $10,000 per year more in West Virginia as an addiction counselor.

[¶ 5] In 2006, Merritt moved for permission to move the parties' child to West Virginia. After a hearing, the district court denied Merritt's motion. The court concluded the move was not in the child's best interests because it would negatively impact the child's quality of life and the child's relationship with Gilbert and extended family.

## II

[¶ 6] A district court's decision on relocation is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Porter v. Porter*, 2006 ND 123, ¶ 5, 714 N.W.2d 865. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support the finding, on the entire evidence, we are left with a definite and firm conviction that a mistake has been made." *Dvorak v. Dvorak*, 2006 ND 171, ¶ 11, 719 N.W.2d 362.

[¶ 7] "A parent entitled to the custody of a child may not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent." N.D.C.C. § 14-09-07. A court's primary consideration in relocation cases is wheth-

er it is in the child's best interests to move to another state. *Dvorak*, 2006 ND 171, ¶ 12, 719 N.W.2d 362. The custodial parent has the burden of proving, by a preponderance of the evidence, that the move is in the child's best interests. *Id.*

[¶ 8] In evaluating whether the move is in the child's best interests, the district court must apply the four factors enumerated in *Stout v. Stout*, 1997 ND 61, 560 N.W.2d 903, and modified in *Hawkinson v. Hawkinson:*

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, [and]

. . . .

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Hawkinson v. Hawkinson*, 1999 ND 58, ¶¶ 6, 9, 591 N.W.2d 144. One factor is not dominant, and what may be a minor factor in one case may be more important in another case. *Dvorak*, 2006 ND 171, ¶ 14, 719 N.W.2d 362. The court must address all four factors in evaluating whether the move is in the child's best interests, and failure to address all four factors is reversible error. *Porter*, 2006 ND 123, ¶ 6, 714 N.W.2d 865.

[¶9] In this case, the district court made findings on the four *Stout–Hawkinson* factors. Merritt does not challenge the court's findings on the second and third factors, but argues the court's findings on the first and fourth factors are clearly erroneous.

## A

[¶10] The first *Stout–Hawkinson* factor requires the district court to consider the prospective advantages of the move, and in doing so, the court must consider both the economic opportunities and the non-economic benefits of the relocation. *Porter*, 2006 ND 123, ¶8, 714 N.W.2d 865. An essential part of the analysis is the "'importance of maintaining continuity and stability in the custodial family.'" *Id.* (quoting *Goff v. Goff*, 1999 ND 95, ¶14, 593 N.W.2d 768). "A [district] court that fails to give sufficient credence to the importance of keeping the custodial family intact commits reversible error." *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶10, 681 N.W.2d 762.

[¶11] Here, the district court concluded the first factor did not support relocation and made the following findings:

In the present case, Kari [Merritt] argues that she has improved employment opportunities in West Virginia. She has been attending school to become a chemical addiction treatment professional, and testified that she is required to complete an internship before she can be employed. She believes she has an opportunity to complete the internship and gain employment in West Virginia.

However, she opted not to seek an internship in North Dakota because she planned to move. While there may not have been opportunities for an internship in Mercer County, the evidence suggests she might well be able to complete an internship in the Bismarck–Mandan area or in another location relatively close to her home.

While Kari [Merritt] believes she may have better employment opportunities in West Virginia, there was no evidence concerning salaries and cost of living on which the Court could make a determination that a move would improve her standard of living.

The court's findings also suggest the court concluded Merritt would not benefit from the move because her husband works out of town most of the year and it may be better if Michael Merritt moved to North Dakota. In summarizing its decision, the court said:

Based on the record, I conclude Kari [Merritt] has not established that the move would improve her quality of life, and it would impact negatively on [the child's] quality of life. The move would allow Kari [Merritt] to live where her husband resides, but he is away from his residence a significant amount of time. While she may obtain employment in West Virginia, she has not made a good faith effort to obtain similar employment in the area where she now resides. The move would require [the child] to leave the area where she has lived and enjoyed a close relationship with both of her parents.

[¶12] The court found Merritt did not make a good faith effort to find employment in North Dakota and did not present evidence of the economic benefits of moving. However, Merritt did not choose to move for economic reasons; she wanted to move to live with her new husband. The court failed to consider the benefits to the custodial family as a result. The interests of the child are so connected to the custodial parent's well being that the interests of the custodial parent must be taken into account:

Prohibiting a move by the custodial parent may force that parent to choose between custody of his or her child and

opportunities that may benefit the family unit, including the child as well as the parent. *These may include a new marriage,* an important job opportunity, or a return to the help provided by an extended family in the rearing of the child by a single parent. Imposing this choice can be severely detrimental to the psychological and economic well-being of the parent over many years. It also has the potential for burdening the parent-child relationship for many years, regardless of the choice the parent makes. *Stout v. Stout,* 1997 ND 61, ¶ 18, 560 N.W.2d 903 (quoting Judith S. Wallerstein and Tony J. Tanke, *To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce,* Fam. L.Q., Vol. 30 No. 2, Pg. 305, 314–15 (Summer 1996)) (emphasis added). In this case, the court's decision may force Merritt to choose between her new marriage and having physical custody of her child.

[¶ 13] We have long emphasized, even before the *Stout–Hawkinson* factors were applied, the importance of maintaining continuity and stability in the custodial family, which includes allowing the custodial family to move to be with a new spouse, and we have reversed relocation decisions when the court did not give that consideration enough weight. *See, e.g., Tibor v. Tibor,* 1999 ND 150, ¶ 19, 598 N.W.2d 480 (reversing denial, court failed to give adequate consideration to keeping custodial family together after custodial parent wanted to relocate because new spouse had secured a high paying job out of state); *Paulson v. Bauske,* 1998 ND 17, ¶ 9, 574 N.W.2d 801 (reversing denial, court failed to give adequate consideration to the need to keep the custodial family together after custodial parent wanted to relocate because new spouse secured employment in another state); *see also Thomas v. Thomas,* 446 N.W.2d 433, 435 (N.D.1989) (affirming district court's find-

ing that continuity and stability in custodial family weighed heavily in favor of allowing move after custodial parent wanted to relocate because new spouse's job required move). Furthermore, we can find no cases where a custodial parent's request to move out of state to live with a new spouse was denied when the integrity of the custodial parent's motive for moving was not questioned.

[¶ 14] Though in *Stout* we said that while "no one factor is to be dominant" in the relocation analysis, we recognized that one factor may be minor in one case, but the dominant factor in another case. *Stout,* 1997 ND 61, ¶ 37, 560 N.W.2d 903. When the custodial parent desires to move to live with a new spouse, we conclude that fact becomes dominant in favor of allowing the move, particularly, in cases such as this, when there is no evidence of ill motive or that the visitation is not likely to occur.

> The children's best interests are inextricably interwoven with the quality of life of the custodial parent, with whom they live and upon whom they rely emotionally. A move which benefits the health and well-being of a custodial parent is certainly beneficial to the parent's child, and is consequently in the child's best interests. It is axiomatic that a newly-wed couple wants to live together and that the child is benefitted by the satisfaction that the custodial parent derives from residing with her spouse.

*Tibor,* 1999 ND 150, ¶ 13, 598 N.W.2d 480 (citations and quotations omitted). In this case, the court clearly erred in failing to give any consideration to the non-economic benefits of the move, including the importance of the stability and continuity of the custodial family and the new marriage.

[¶ 15] Moreover, the court's findings about the economic advantages of the move are not supported by the evi-

dence. The court found Merritt did not present evidence of salaries and cost-of-living. A custodial parent is not required to provide a comparative cost-of-living analysis to prove the economic advantages of the move. *Dickson v. Dickson*, 2001 ND 157, ¶ 19, 634 N.W.2d 76. Merritt presented evidence of the economic advantages of the move. Merritt testified that she received an offer of employment in West Virginia, and that she would earn approximately $10,000 more per year in West Virginia as an addiction counselor than in North Dakota. Merritt testified the custodial family would be better off financially if they reside in West Virginia because they would only have to support one household. She also testified that, if she stayed in North Dakota, she would have to relocate within the state because there are no job opportunities for addiction counselors in the area where she resides. Michael Merritt testified that if he moved to North Dakota his expenses would increase because he would have to provide his own transportation to job sites throughout the country. The evidence in the record does not support the court's findings.

[¶ 16] We conclude the district court failed to correctly apply the law. It did not give consideration to the evidence Merritt offered of both economic and non-economic advantages of the move, and failed to consider the importance of keeping the custodial family intact. We therefore conclude the court's findings are clearly erroneous.

B

[¶ 17] The fourth *Stout–Hawkinson* factor requires the district court consider "the negative impact of the move on the noncustodial parent's relationship with the child[ ] and the ability to restructure visitation to foster and preserve the relationship." *Oppegard–Gessler*, 2004 ND 141, ¶ 15, 681 N.W.2d 762. Distance alone cannot be the basis for denying the custodial parent's request to move, rather it must be considered in the context of the ability to modify the visitation schedule so that the noncustodial parent's relationship with the child is maintained. *Goff*, 1999 ND 95, ¶ 17, 593 N.W.2d 768. Although it may be impossible to establish a visitation schedule with the same amount of visitation or with visitation as frequent, in analyzing the fourth factor, the court must consider that "[a] visitation schedule which provides less frequent, but extended, visitation periods will preserve a noncustodial parent's ability to foster and develop a relationship with the child." *Tibor*, 1999 ND 150, ¶ 24, 598 N.W.2d 480.

[¶ 18] Here, both Merritt and Gilbert proposed a modified visitation schedule. Merritt proposed week long Thanksgiving, Christmas, and spring break or Easter visitation in alternating years; and extended summer visitation starting with five weeks during the summer of 2006 and increasing by one week each year up to a total of eight weeks of visitation. Merritt proposed the visitation exchanges occur in Beloit, Wisconsin, with each party paying their own expenses, and if the child travels by plane Gilbert would pay for the child's ticket and a parent would accompany the child on the plane, with the parent paying for their own ticket. Gilbert proposed a similar visitation schedule, but requested summer visitation starting one week after the completion of the school year and ending one week before the start of the new school year. Gilbert also agreed to use Beloit, Wisconsin, as an exchange location with each party paying their own transportation expenses, but he proposed if the child travels by plane a parent would accompany the child and the parties would evenly split the child's transportation expenses.

[¶ 19] The district court concluded the fourth factor did not support relocation after considering only Merritt's proposed visitation schedule. The court found it was unlikely the full amount of visitation would occur because it would involve a lot of travel time and significant expense, and the summer visitation was not an extended visitation because it was the same amount of visitation Gilbert receives under the current visitation schedule. The court concluded the move would negatively impact the child's relationship with her father and extended family, and there would not be a reasonable opportunity for visitation to maintain the child's relationship with Gilbert and extended family.

[¶ 20] We conclude the district court's findings that visitation could not be restructured are clearly erroneous. The court only considered Merritt's proposed visitation, and failed to consider Gilbert's proposal or to fashion its own visitation schedule. The district court concluded the visitation would likely not occur due to the high transportation costs, but there is no evidence to support the court's finding. Merritt has complied with the court ordered visitation in the past and has been flexible allowing more visitation than was ordered. There is no evidence in the record that the visitation would not occur. Furthermore, Gilbert conceded in his brief and at oral argument the visitation schedule could be restructured, there is no reason the visitation would not occur, and the evidence did not support the court's findings.

[¶ 21] The visitation schedule can be restructured to foster the relationship between the child and Gilbert by allowing liberal visitation during the summer months and holiday vacations. Gilbert's proposed visitation schedule is similar to those we have indicated are acceptable in other cases. *See, e.g., Jelsing v. Peterson,* 2007 ND 41, ¶¶ 19–20, 729 N.W.2d 157;

*Tibor,* 1999 ND 150, ¶¶ 25–26, 598 N.W.2d 480. Gilbert's proposed visitation schedule allowed for week long Thanksgiving, Christmas, and spring break or Easter visitation in alternating years, and summer visitation beginning one week after the school year ends until one week before the school year begins. He also proposed the visitation exchanges occur in Beloit, Wisconsin, with the parties paying their own transportation expenses, or if air transportation is used the parties would split the child's transportation expenses. On remand, the district court can consider establishing a visitation schedule similar to that proposed by Gilbert.

[¶ 22] The district court can also consider whether virtual visitation can be used to supplement in-person visitation. Virtual visitation includes using the telephone, Internet, web-cam, and other wireless or wired technologies to ensure the child has frequent and meaningful contact with the noncustodial parent. It is most useful in cases such as this where the child and noncustodial parent are accustomed to seeing each other on a regular basis but no longer will be able to because of the relocation. Virtual visitation is not a substitute for personal contact, but it can be a useful tool to supplement in-person visitation. Virtual visitation is becoming more widely recognized as a way to supplement in-person visitation. *See, e.g., Tibor,* 1999 ND 150, ¶ 26, 598 N.W.2d 480 ("modern transportation reduces the measure of distance from days to hours, and instant communication is available through phone and cable links."); *McCoy v. McCoy,* 336 N.J.Super. 172, 764 A.2d 449, 454 (App. Div.2001) (using the Internet to enhance visitation was creative and innovative); Fla. Stat. Ann. § 61.13001(9)(a) (2007) (urges courts to consider virtual visitation in relocation cases); Utah Code Ann. § 30-3-33(14) (2007) (advisory guidelines

for parent-time arrangements suggest using virtual visitation to supplement in-person visitation); Wis. Stat. Ann. § 767.41 (2007) (parenting plan should include information about using electronic communication between child and parent). Virtual visitation is another option the district court can consider to help maintain and foster the relationship the child has with Gilbert and her extended family.

### III

[¶ 23] We have reviewed the record and conclude the district court's finding the move is not in the child's best interests is clearly erroneous. Because the district court's findings on economic benefits are not supported by the evidence, the district court failed to consider the importance of the stability of the custodial family and new marriage, there is no evidence of ill motive, and the district court's findings that visitation could not be restructured or is not likely to occur are not supported by the evidence; we conclude the district court misapplied the law and on this record we are left with a definite and firm conviction a mistake has been made. We reverse the order of the district court and remand with instructions the district court enter an order granting the motion to move and establishing an appropriate visitation schedule.

[¶ 24] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, J., and BENNY A. GRAFF, S.J., concur.

[¶ 25] The Honorable BENNY A. GRAFF, S.J., sitting in place of SANDSTROM, J., disqualified.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 26] I concur with the majority's conclusion that the district court erred when applying factor 1. Majority opinion at ¶ 16. The case must be reversed, and should be remanded for the district court's further analysis of factor 1.

[¶ 27] Depending on the district court's findings and conclusions under factor 1, the district court might need to make additional findings and conclusions under factor 4. Making findings and conclusions under either factor 1 or factor 4 is, in the first instance, a job for the district court and not us. *See Klein v. Larson*, 2006 ND 236, ¶ 36, 724 N.W.2d 565 (Crothers, J., dissenting).

[¶ 28] I believe this Court is usurping the district court's fact-finding function by requiring that the district court enter an order granting the motion to move. I would remand to allow the district court to finish its work. I therefore dissent from those portions of the opinion adjudicating the factors and granting the requested relief.

[¶ 29] DANIEL J. CROTHERS